FILED - GR
October 16, 2009 12:04 PM

TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: __rmw___/_____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

------------------------------------------------------------ x
                                                             :
AGILE FUND I, LLC, a Delaware Limited                        :
Liability Company,                                           :
                                                             :
                        Plaintiff,                           :
                                                             :
            - v. -                                           :   CIVIL ACTION NO.
                                                             :
                                                             :   HON. **1:09-cv-958**
OLD ORCHARD BRANDS LLC, a                                    :
Michigan Limited Liability Company,                          :        **Janet T. Neff**
APPLE VALLEY HOLDINGS, INC., a                               :        **U.S. District Judge**
Michigan Corporation, HOWARD                                 :
VELTMAN, MARK R. SAUR, individually                          :
and as trustee of the MARK R. SAUR                           :
TRUST, LISA M. SAUR, individually and                        :
as trustee of the LISA M. SAUR TRUST,                        :
HILLSBORO ASSOCIATES, LLC, a                                 :
Michigan Limited Liability Company,                          :
ARTHUR S. VELTMAN, and CHARLENE                              :
VREDEVELT,                                                   :
                                                             :
                        Defendants.                          :
                                                             :
------------------------------------------------------------ x

### AGILE FUND I, LLC'S COMPLAINT FOR
### SPECIFIC PERFORMANCE AND MONEY DAMAGES

Plaintiff Agile Fund I, LLC ("Agile"), by its undersigned attorneys, alleges as follows as its complaint against defendants Old Orchard Brands LLC ("Old Orchard" or the "Company"), Apple Valley Holdings, Inc. ("Apple Valley"), Howard Veltman, Mark R. Saur, individually and as trustee of the Mark R. Saur Trust, Lisa M. Saur,

individually and as trustee of the Lisa M. Saur Trust, Hillsboro Associates, LLC, Arthur S. Veltman, and Charlene Vredevelt:

## PARTIES

1. Plaintiff Agile is an investment fund formed as a Delaware limited liability company and is managed by Allied Capital Corporation, a Maryland corporation that is based in Washington, D.C. ("Allied"). Agile is a Member of Old Orchard. Agile's membership and equity interests in Old Orchard were unlawfully diluted by Old Orchard's management and other Members contrary to the terms of the Third Amended and Restated Operating Agreement of Old Orchard Brands LLC ("Operating Agreement"), *see* Ex. 1, to which Agile is a party.

2. For the purpose of establishing diversity jurisdiction, Agile states that none of its Members nor their constituent partners or members are citizens of Michigan.

3. Defendant Old Orchard is a Michigan limited liability company doing business in Sparta, Kent County, Michigan. Old Orchard is engaged in the business of manufacturing juice products, including, without limitation, ready-to-drink juice and frozen concentrate juice. Old Orchard management, including but not limited to defendants Mark Saur and Howard Veltman, benefits from investors like Agile by using their capital investments to expand Old Orchard's business and brands as well as continue to meet the needs of its retail partners and consumers. Equity and membership interest in Old Orchard is measured and determined by issuance of Common Units. Each Member's right to vote, participate in management decisions, receive distributions, and

2

receive allocations of profits and losses, are all determined ratably in accordance with each Member's percentage interest in Old Orchard. *See* Ex. 1, Arts. IV-V. Each Member's percentage interest in the Company is determined in accordance with the ratio of the number of Units owned by the Member compared with the total number of Units owned by the other Members. A Member's percentage equity and membership interest in Old Orchard is an important and primary consideration of investment in Old Orchard.

    4.    For the purpose of establishing diversity jurisdiction, the name and citizenship of Old Orchard's Members, not including Agile, are as follows:

    a.    Mark R. Saur, a Michigan citizen, and trustee of Member Mark R. Saur Trust. Mr. Saur is the Chief Executive Officer and President of Old Orchard. Mr. Saur is also a defendant.

    b.    Lisa M. Saur, a Michigan citizen, and trustee of Member Lisa M. Saur Trust. Ms. Saur is also a defendant.

    c.    Apple Valley Holdings, Inc., a Michigan corporation with its principal place of business in Kent County, Michigan ("Apple Valley"). Mr. Saur is the President of Apple Valley. Apple Valley is also a defendant.

    d.    Howard Veltman, a Michigan citizen. Mr. Veltman is the Chief Financial Officer of Old Orchard, and the Vice President of Apple Valley. Mr. Veltman is also a defendant.

    e.    Hillsboro Associates, LLC, a Michigan limited liability company ("Hillsboro"). Hillsboro is also a defendant.

      i. For purposes of establishing diversity jurisdiction, and upon information and belief, Arthur S. Veltman is the sole manager and member of Hillsboro, and is a Michigan citizen. Mr. Veltman is also a defendant.

  f. Charlene Vredevelt, a Michigan citizen. Ms. Vredevelt is also a defendant.

  5. Defendant Apple Valley Holdings Inc. is a Michigan corporation, has its principal place of business in Kent County, Michigan, and is a Member of Old Orchard.

  6. Defendant Howard Veltman is a Michigan citizen and a Member of Old Orchard.

  7. Defendant Mark R. Saur is a Michigan citizen and a Member of Old Orchard by and through the Mark R. Saur Trust.

  8. Defendant Lisa M. Saur is a Michigan citizen and a Member of Old Orchard by and through the Lisa M. Saur Trust.

  9. Defendant Charlene Vredevelt is a Michigan citizen and a Member of Old Orchard.

  10. Defendant Hillsboro is a Michigan limited liability company and a Member of Old Orchard. For purposes of establishing diversity jurisdiction, and upon information and belief, Arthur S. Veltman is the sole manager and member of Hillsboro, and is a Michigan citizen.

11.     Defendant Arthur S. Veltman is a Michigan citizen.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction pursuant to 28 USC 1332, as the parties and/or their respective members and partners are citizens of different states, and the amount in controversy exceeds the sum value of $75,000, exclusive of costs and interest.

13.     Defendants are subject to personal jurisdiction in this judicial district, and transact business in this judicial district.

14.     Venue is proper in this judicial district pursuant to 28 USC 1391(a).

## BACKGROUND

### Agile Obtains an Ownership Interest in Old Orchard in January 2008 and Becomes a Party to the Old Orchard Operating Agreement

15.     On January 22, 2008, Agile purchased 4.1986 Common Units ("Units") in Old Orchard from Allied. At that time, Old Orchard had 38.7671 total Units outstanding. Agile's purchase of 4.1986 Units gave it a 10.8303% ownership interest in Old Orchard. Before selling 4.1986 Units to Agile, Allied owned 30.5665 Units of Old Orchard, making Allied a 78.8464% majority interest holder of Old Orchard. Allied owned its interest in Old Orchard through Old Orchard Equity Corp., an entity wholly owned by Allied. Allied's sale of 4.1986 Units to Agile reduced Allied's total Units to 26.3679, and its percentage interest in Old Orchard to 68.0162%.

16.     After Agile's purchase of 4.1986 Units in Old Orchard, Agile became a party to Old Orchard's Operating Agreement, and Old Orchard's books and records were formally amended and revised to reflect Agile's ownership interest in Old

5

Orchard. Thus, Old Orchard's books and records reflected the following equity and membership interests as of January 22, 2008:

| Member | Units | Percentage Interest |
|---|---|---|
| Allied (by and through Old Orchard Equity Corp.) | 26.3679 | 68.0162% |
| Defendant Apple Valley Holdings, Inc.[1] | 7.8692 | 20.2987% |
| Defendant Howard Veltman | 0.3314 | 0.8548% |
| Plaintiff Agile Fund | 4.1986 | 10.8303% |
| TOTAL | | |
| 4 Members | 38.7671 | 100.000% |

17.     A material inducement for Agile's purchase of Old Orchard was its equity and membership percentage interest in the Company, determined in accordance with the ratio of the number of Units owned by Agile compared with the total number of Units owned by the other Members. Agile's right to vote, participate in management decisions, receive distributions, and receive allocations of profits and losses from Old Orchard is determined according to its percentage ownership interest. The Old Orchard Operating Agreement specifies the precise mechanics and procedure that must be followed before a Member's percentage interest in Old Orchard can be altered or reduced.

---

[1] Apple Valley shares the same street address as Old Orchard Brands, LLC. Mark Saur is the President of Apple Valley, and Howard Veltman is the Vice President.

6

## The Operating Agreement

18. The Operating Agreement provides each Member the preemptive right to purchase a sufficient number of any new Units issued to maintain its percentage membership interest in Old Orchard, determined by comparing the number of Units owned by Agile with the total number of Units owned by the other Members at the time of the new Issuance:

> [T]he Company hereby grants to each Member the right to purchase a portion of any future offering (an 'Eligible Offering') of any Units . . . which bears the same ratio to the aggregate amount of securities covered by such Eligible Offering as the number of Units . . . owned by such Member bears to the total number of Units . . . owned by all of the Members at the time. Ex. 1, §17.1.

19. The Operating Agreement sets forth specific procedures that must be followed in order to effect proper notice to each Member that new Units will issue:

> Section 17.2 <u>Notice of Eligible Offering</u>
>
> Before issuing any securities pursuant to an Eligible Offering, the Company shall give written notice thereof to <u>each</u> Member. Such notice must specify the security or securities the Company proposes to issue and the consideration that the Company intends to receive for such security or securities being issued. For a period of 20 days following the delivery of such notice (the '<u>Notice Period</u>'), such notice by the Company shall serve as an offer entitling each Member to elect to purchase, by written notice to the Company, up to the portion of the securities being sold in the Eligible Offering calculated in accordance with Section 17.1. . . . (emphasis added).

20. These formal notice procedures are important because notice thereunder constitutes a formal, legal offer by the Company to each Member, and it

7

triggers a 20-day period during which each Member is entitled to accept the Company's formal, legal offer.

21. The Operating Agreement dedicates an entire Article (XII) to the issue, entitled "Notices:"

Section 12.1 <u>Form; Delivery.</u>

> Whenever, under the provisions of . . . this Agreement, notice is required to be given to the Members. . ., it shall be construed to mean notice given in writing, by mail, facsimile or electronic mail, addressed to such . . . Member, at such postal address, facsimile number or electronic mail address, as applicable, as it appears on the records of the Company. . . .

22. So important was providing formal written notice, in strict compliance with the provisions of the Operating Agreement, that it could not be waived absent a signed writing from the Member waiving it:

Section 12.2 <u>Waiver.</u>

> Whenever any notice is required to be given under the provisions of . . . this Agreement, a written waiver thereof, signed by the Person or Persons entitled to said notice, whether before or after the time stated therein, shall be deemed to be equivalent to such notice.

23. The required formal written notice was to be sent to <u>each</u> Member listed in the Member Schedule of the Operating Agreement. *See* Ex. 1, Schedule 1, Counterpart adding Agile to Member Schedule. The parties considered it important that formal written notice be separately provided to each Member, regardless of any affiliations that may exist between or among the Members.

8

24. The formal written notice, to which each Member is entitled, constitutes a formal offer by the Company to each Member, entitling each Member to purchase the new Units on the terms issued in the notice. *See* Ex. 1, §17.2 ("[S]uch notice by the Company shall serve as an offer entitling each Member to elect to purchase" a portion of the new Units in accordance with section 17.1).

25. The Operating Agreement provides that a Member who receives formal written notice of a new issuance of Units from the Company has the right, within 20 days following the proper delivery of such notice, to purchase its pro rata share of new Units "for the consideration and on the terms set forth in the Company's notice of such Eligible Offering." Ex 1, §17.3. Indeed, Old Orchard is prohibited from offering new Units to Members "for a purchase price or on other terms materially different from those set forth in the Company's notice of the relevant Eligible Offering. . . ." *Id.*

26. As one final measure to protect each Member from dilution of their respective percentage interests in Old Orchard, no new issuance of Units can occur, and no new Member can be added, without the approval of Old Orchard's Board of Managers. *See* Ex. 1, §10.9(h)-(i). At the time Agile purchased its Units from Allied, Allied representatives held three of the five Board of Manager positions. Defendants Mark Saur and Howard Veltman held the other two manager positions.

27. The Operating Agreement provides that Michigan law governs the Operating Agreement. *See* Ex 1, §19.4. The Agreement also provides each Member with the right to specific enforcement of the Operating Agreement for any breach in

9

connection with the transfer of interests thereunder or a violation of the notice provisions for new issuances in Article XVII. *See* Ex. 1, §§14.2, 14.3.

28. Moreover, Old Orchard, its Members, and its management have fiduciary duties to all Old Orchard Members to provide formal and timely notice to each Member before new Units will issue.

### Allied Sells its Remaining Units to the Company on March 31, 2009, and Each Remaining Member's Percentage Interest Increases Accordingly — Agile Has a 33.8619% Interest in Old Orchard

29. On March 31, 2009, Allied entered into a Contribution and Redemption Agreement ("Redemption Agreement") to sell its remaining 26.3679 Units to Old Orchard. Agile was not a party to the Redemption Agreement.

30. By virtue of Allied's sale of its 26.3679 Units reflecting its 68.0162% ownership interest back to the Old Orchard, the remaining Unit holders owned 100% of the equity interest in the Company.

31. Thus, the percentage Member interest of Old Orchard changed as follows:

| Member | Units | Member Percentage Interest With Allied | Member Percentage Interest After Allied's Redemption |
|---|---|---|---|
| Allied | 26.3679 | 68.0162% | n/a |
| Defendant Apple Valley Holdings, Inc. | 7.8692 | 20.2987% | 63.4654% |
| Defendant Howard Veltman | 0.3314 | 0.8548% | 2.6728% |
| Plaintiff Agile Fund | 4.1986 | 10.8303% | 33.8619% |
| **TOTAL** | 39.1987 | 100.0000% | 100.0000% |

32. Thus, as of March 31, 2009, if any new Units were offered for sale, Agile had the right to buy enough of those new Units sufficient to maintain its 33.8619% membership interest in Old Orchard.

**Defendants Breach the Operating Agreement by Issuing 70.9505 New Units to Old Orchard Management Without Providing the Required Notice to Agile, and Thus Depriving Agile of its Right to Purchase 33.8619%, or 24.0251 Units, of the 70.9505 New Units Issued**

33. Defendants issued 70.9505 Units to defendants Lisa M. Saur Trust, Mark R. Saur Trust, Hillsboro, Howard Veltman, and Charlene Vredevelt without providing to Agile the notice required under the Operating Agreement. By these actions, defendants unlawfully diluted and converted from Agile the majority of its 33.8619% ownership interest in Old Orchard.

34. Ironically, at the same time defendants were maneuvering to deprive Agile of its percentage interest in Old Orchard without proper notice, defendants were

11

negotiating notice provisions in the Redemption Agreement specifically requiring formal and separate notice to each and every Old Orchard officer, Member, or affiliate, regardless of affiliation and regardless of whether the Old Orchard affiliates shared the same address, which some did.

35. Without providing to Agile the notice required by the Operating Agreement, defendants issued to themselves 70.9505 new Units in Old Orchard. The new issuance created almost three times the total number of outstanding Member-owned Units as existed before the new issuance, added several new members of Old Orchard (namely defendants Mark Saur, Lisa Saur, and Howard Veltman) with greater percentage ownership interests than Agile, the net effect of which was to dilute Agile's percentage ownership interest in Old Orchard from 33% to 5%.

36. The per-Unit purchase price at which defendants sold themselves the 70.9505 new Units was $273,273.75. This price implied an equity value for Old Orchard that was significantly below the equity value at which other non-conflicted investors were ready, willing, and able to invest in Old Orchard, based on contemporaneous negotiations with Old Orchard's management.

37. The offering of additional Units to defendants was an "Eligible Offering" as defined in the Operating Agreement. As a result, Agile was entitled under sections 12.1, 12.2, 17.1 and 17.2 of the Operating Agreement to notice and an opportunity to purchase 24.0251 of the 70.9505 new Units in order to exercise its right to maintain its 33.8619% membership interest in Old Orchard. Agile was also entitled under section 17.3 to purchase these new Units at the same price and on the same terms

as defendants. By failing to provide Agile with the notice required by the Operating Agreement, and depriving Agile of the opportunity to purchase enough new Units to maintain its 33.8619% ownership interest, let alone at a price commensurate to that paid by defendants, defendants breached the Operating Agreement and their fiduciary duties to Agile.

38. As a result of defendants' breaches of the Operating Agreement and their fiduciary duties to Agile, the investment and ownership landscape of Old Orchard was drastically altered in favor of defendants, and to the detriment of Agile, as follows:

| Members | Member-Owned Units | New Member Percentage Interest |
|---|---|---|
| Defendant Mark R. Saur Trust | 41.4475 | 49.7272% |
| Defendant Lisa M. Saur Trust | 18.2967 | 21.9517% |
| Defendant Howard Veltman | 4.2191[2] | 5.0506% |
| Defendant Hillsboro Associates, LLC | 3.6593 | 4.3902% |
| Defendant Charlene Vredevelt | 3.6593 | 4.3902% |
| Defendant Apple Valley Holdings, Inc.[3] | 7.8692 | 9.4411% |
| Plaintiff Agile Fund | 4.1986 | 5.0373% |
| **TOTAL** | | |
| 7 Members | 83.3497 | 100.000% |

---

[2] Combination of 0.3314 units pre-March 31, 2009, and 3.8877 new units issued on April 7, 2009.

[3] Defendant Mark Saur is the President of Apple Valley. Defendant Veltman is the Vice President.

13

39. Agile relied in good faith on the terms of the Operating Agreement, and on defendants' concomitant duty to abide by the terms and the spirit of the Operating Agreement, including but not limited to the provisions relating to the material consideration for each Member — protection of their respective percentage ownership interests.

40. By taking action to issue new Units without the proper notice to Agile, or offering Agile its right to purchase enough new Units to maintain its 33.8619% interest, defendants have breached the Operating Agreement, unlawfully reduced and diluted Agile's ownership and investment interest in Old Orchard, and have caused and will cause Agile to incur substantial monetary damages, including but not limited to the foregone payments and other interests in accordance with the unlawful reduction of its percentage ownership and investment interest in Old Orchard.

**Count I**

**DECLARATORY JUDGMENT**

41. Agile incorporates and re-alleges the allegations in paragraphs 1-40 herein.

42. This Court may grant the declaratory relief sought herein pursuant to 28 USC 2201 and FED. R. CIV. P. 57. An actual controversy exists because of defendants' material breaches of the Operating Agreement, and the material breaches of fiduciary duties owed by them to Agile.

43. Defendants: (a) materially breached the Operating Agreement by failing to provide proper notice, and thus a proper offering, under the Operating

Agreement to Agile to purchase a sufficient number of new Units in order to maintain the percentage interest in Old Orchard to which Agile was entitled under the Operating Agreement; (b) materially breached the Operating Agreement by refusing to offer Agile its contractual right to purchase its percentage interest in the new Units at the same price at which Old Orchard sold the new Units to defendants; (c) by their actions of unlawfully and surreptitiously breaching the Operating Agreement in the manner described herein, defendants breached their fiduciary duties of good faith and fair dealing owed to Agile; and (d) by their actions defendants have unlawfully misappropriated Agile's percentage equity and membership interest in Old Orchard.

44.   This Court should enter a judgment declaring that: (a) defendants materially breached the Operating Agreement, breached their fiduciary duties owed to Agile, and unlawfully misappropriated Agile's percentage equity and ownership interests in Old Orchard; (b) defendants must specifically perform in accordance with the Operating Agreement and sell to Agile 24.0251 Units from the 70.9505 new Units issued by Old Orchard, or alternatively sufficient additional Units to restore Agile to its rightful ownership interest, at the same per-Unit price at which Old Orchard sold those new Units to defendants; and (c) that defendants pay the costs and fees Agile incurred in having to bring this action in response to defendants' intentional and material breaches of contract and fiduciary duty.

## Count II

### SPECIFIC PERFORMANCE

45. Agile incorporates and re-alleges the allegations in paragraphs 1-44 herein.

46. This Court may order defendants to specifically perform under the Operating Agreement in accordance with the specific performance and other provisions of that Agreement, as well as under Michigan law. The actions taken by defendants above threaten to irrevocably and unlawfully misappropriate from Agile the percentage membership interest in Old Orchard to which Agile is entitled under the Operating Agreement, and deprive Agile of its contractual and equitable right to purchase an amount of new Units, at the same price Old Orchard sold the new Units to defendants, sufficient for Agile to maintain the percentage equitable and membership interest in Old Orchard to which it is entitled.

47. Defendants: (a) materially breached the Operating Agreement by failing to provide proper notice, and thus a proper offering, under the Operating Agreement to Agile to purchase a sufficient number of new Units in order to maintain the percentage interest in Old Orchard to which Agile was entitled under the Operating Agreement; (b) materially breached the Operating Agreement by refusing to offer Agile its right to purchase its percentage interest in the new Units at the same price which Old Orchard sold the new Units to defendants; (c) by their actions of unlawfully and surreptitiously breaching the Operating Agreement in the manner described herein, defendants breached their fiduciary duties of good faith and fair dealing owed to Agile;

16

and (d) by their actions defendants have unlawfully misappropriated Agile's percentage equity and membership interest in Old Orchard.

48. This Court should enter a decree ordering defendants to specifically perform their duties under the Operating Agreement as follows: (a) sell to Agile 24.0251 Units from the 70.9505 new Units issued by Old Orchard, or alternatively sufficient additional Units to restore Agile to its rightful ownership interest, at the same per-Unit price at which Old Orchard sold those new Units; and (b) pay the costs and fees Agile incurred in having to bring this action in response to defendants' intentional and material breaches of contract and fiduciary duty.

### Count III

### BREACH OF CONTRACT

49. Agile incorporates and re-alleges the allegations in paragraphs 1-48 herein.

50. Defendants breached the Operating Agreement by, among other things, (a) failing to provide proper notice, and thus a proper offering, under the Operating Agreement to Agile to purchase a sufficient number of new Units in order to maintain the percentage interest in Old Orchard to which Agile was entitled under the Operating Agreement; (b) refusing to offer Agile its contractual right to purchase its percentage interest in the new Units at the same price at which Old Orchard sold the new Units to defendants; and (c) failing to adhere to their fiduciary duties of good faith and fair dealing owed to Agile and included in the Operating Agreement by operation of law.

51. Defendants' breaches of the Operating Agreement were material.

52. Agile suffered damages in excess of $75,000.00 as a result of defendants' material breaches of the Operating Agreement.

## Count IV

## BREACH OF FIDUCIARY DUTY

53. Agile incorporates and re-alleges the allegations in paragraphs 1-52 herein.

54. Limited liability companies and their members owe fiduciary duties to their co-members to disclose all material facts before purchasing or diluting a co-member's interest in the company. So each Member of Old Orchard was required to put the best interests of their co-Members before their own, or at the very least on par with their own. Also, management of limited liability companies owe fiduciary duties to members. The Michigan Limited Liability Company Act requires Old Orchard management to discharge their duties fairly and in good faith as to each and every Member, including Agile. *See* MCL 450.4404(1).

55. Defendants' conduct, set forth above, constitutes a breach and continuing breach of their fiduciary duties to Agile.

56. Agile has been damaged, and continues to be damaged, as a direct result of defendants' conduct.

57. As a result of defendants' breaches of fiduciary duty, Agile suffered damages in excess of $75,000.00.

## Count V

## **UNJUST ENRICHMENT**

58. Agile incorporates and re-alleges the allegations in paragraphs 1-57 herein.

59. Defendants have received a benefit from the unlawful misappropriation of Agile's percentage equity and membership interests in Old Orchard at a reduced price.

60. It would be unjust to permit defendants to retain those benefits given their intentional and material misappropriation and breaches of contract and fiduciary duty.

61. In order to remedy this unjust enrichment and to compensate Agile for its damages, this Court should compel defendants to sell to Agile 24.0251 Units from the 70.9505 new Units issued by Old Orchard, or alternatively sufficient additional Units to restore Agile to its rightful ownership interest, at the same per-Unit price at which Old Orchard sold those new Units to defendants; and pay the costs and fees Agile incurred in having to bring this action in response to defendants' intentional and material breaches of contract and fiduciary duty.

\*    \*    \*    \*

WHEREFORE, Agile respectfully requests that this Court enter a judgment declaring that: (a) defendants materially breached the Operating Agreement, breached their fiduciary duties owed to Agile, and unlawfully misappropriated Agile's percentage equity and ownership interests in Old Orchard; (b) defendants must specifically perform in accordance with the Operating Agreement and sell to Agile 24.0251 Units from the 70.9505 new Units issued by Old Orchard, or alternatively sufficient additional Units to restore Agile to its rightful ownership interest, at the same per-Unit price at which Old Orchard sold those new Units to defendants; and (c) that defendants pay the costs and fees Agile incurred in having to bring this action in response to defendants' intentional and material breaches of contract and fiduciary duty.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: *Thomas W. Cranmer by [signature]*   P/12639
Thomas W. Cranmer (P25252)
Matthew P. Allen (P57914)
Attorneys for Agile Fund I, LLC
840 West Long Lake Road, Suite 200
Troy, MI 48098
(248) 879-2000
cranmer@millercanfield.com
allen@millercanfield.com

Date: October 16, 2009

6987648.14\143085-00001