UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

AGILE FUND I, LLC, a Delaware Limited
Liability Company,

          Plaintiff,                           CIVIL ACTION NO: 1:09-cv-958

v.                                        HON. Janet T. Neff

OLD ORCHARD BRANDS LLC, a Michigan
Limited Liability Company; APPLE VALLEY
HOLDINGS, INC., a Michigan Corporation;
HOWARD VELTMAN; MARK R. SAUR,
individually and as trustee of the MARK R.
SAUR TRUST; LISA M. SAUR, individually
and as trustee of the LISA M. SAUR TRUST;
HILLSBORO ASSOCIATES, LLC, a
Michigan Limited Liability Company;
ARTHUR S. VELTMAN; and CHARLENE
VREDEVELT,

**ANSWER TO COMPLAINT,**
**AFFIRMATIVE DEFENSES**
**AND JURY DEMAND**

          Defendants.

_____/

    NOW COME Defendants, by and through their counsel of record, VARNUM, and hereby

answer Plaintiff's Complaint as follows:

## PARTIES

    1.    Plaintiff Agile is an investment fund formed as a Delaware limited liability

company and is managed by Allied Capital Corporation, a Maryland corporation that is based in

Washington, D.C. ("Allied"). Agile is a Member of Old Orchard. Agile's membership and

equity interests in Old Orchard were unlawfully diluted by Old Orchard's management and other

Members contrary to the terms of the Third Amended and Restated Operating Agreement of Old

Orchard Brands LLC ("Operating Agreement"), *see* Ex. 1, to which Agile is a party.

**ANSWER:** **Defendants admit, upon information and belief, that Agile is an investment fund formed as a Delaware limited liability company and is managed by Allied Capital Corporation and that Agile is a member of Old Orchard. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation that Allied is based in Washington, D.C. The remaining allegations in this paragraph are denied because they are untrue.**

2. For the purpose of establishing diversity jurisdiction, Agile states that none of its Members nor their constituent partners or members are citizens of Michigan.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

3. Defendant Old Orchard is a Michigan limited liability company doing business in Sparta, Kent County, Michigan. Old Orchard is engaged in the business of manufacturing juice products, including, without limitation, ready-to-drink juice and frozen concentrate juice. Old Orchard management, including but not limited to defendants Mark Saur and Howard Veltman, benefits from investors like Agile by using their capital investments to expand Old Orchard's business and brands as well as continue to meet the needs of its retail partners and consumers. Equity and membership interest in Old Orchard is measured and determined by issuance of Common Units. Each Member's right to vote, participate in management decisions, receive distributions, and receive allocations of profits and losses, are all determined ratably in accordance with each Member's percentage interest in Old Orchard. *Se* Ex. 1, Arts. IV-V. Each Member's percentage interest in the Company is determined in accordance with the ratio of the number of Units owned by the Member compared with the total number of Units owned by the

other Members.  A Member's percentage equity and membership interest in Old Orchard is an important and primary consideration of investment in Old Orchard.

**ANSWER:   Defendants admit only that Old Orchard is a Michigan limited liability company doing business in Sparta, Michigan, that it is engaged in the business of manufacturing juice products, that a membership interest in Old Orchard is measured and determined by issuance of common units, and that capital investments into Old Orchard by members benefit the company.  Member voting rights, as well as rights to participate in management decisions, receive distributions and receive allocations of profit and losses are set forth in the Operating Agreement, the terms of which speak for themselves.  Any remaining allegations in this paragraph are denied because they are untrue.**

4.      For the purpose of establishing diversity jurisdiction, the name and citizenship of Old Orchard's Members, not including Agile, are as follows:

        a.      Mark R. Saur, a Michigan citizen, and trustee of Member Mark R. Saur Trust.  Mr. Saur is the Chief Executive Officer and President of Old Orchard.  Mr. Saur is also a defendant.

        b.      Lisa M. Saur, a Michigan citizen, and trustee of Member Lisa M. Saur Trust.  Ms. Saur is also a defendant.

        c.      Apple Valley Holdings, Inc., a Michigan corporation with its principal place of business in Kent County, Michigan ("Apple Valley").  Mr. Saur is the President of Apple Valley.  Apple Valley is also a defendant.

        d.      Howard Veltman, a Michigan citizen.  Mr. Veltman is the Chief Financial Officer of Old Orchard, and the Vice President of Apple Valley.  Mr. Veltman is also a defendant.

e.     Hillsboro Associates, LLC, a Michigan limited liability company ("Hillsboro").  Hillsboro is also a defendant.

i.     For purposes of establishing diversity jurisdiction, and upon information and belief, Arthur S. Veltman is the sole manager and member of Hillsboro, and is a Michigan citizen.  Mr. Veltman is also a defendant.

f.     Charlene Vredevelt, a Michigan citizen.  Ms. Vredevelt is also a defendant.

**ANSWER:     It is denied that Arthur Veltman is the sole manager and member of Hillsboro because it is untrue.  The remaining allegations contained in this paragraph are admitted.**

5.     Defendant Apple Valley Holdings Inc. is a Michigan corporation, has its principal place of business in Kent County, Michigan, and is a Member of Old Orchard.

**ANSWER:     Admitted.**

6.     Defendant Howard Veltman is a Michigan citizen and a Member of Old Orchard.

**ANSWER:     Admitted.**

7.     Defendant Mark R. Saur is a Michigan citizen and a Member of Old Orchard by and through the Mark R. Saur Trust.

**ANSWER:     Admitted.**

8.     Defendant Lisa M. Saur is a Michigan citizen and a Member of Old Orchard by and through the Lisa M. Saur Trust.

**ANSWER:     Admitted.**

9.     Defendant Charlene Vredevelt is a Michigan citizen and a Member of Old Orchard.

**ANSWER:** **Admitted.**

10. Defendant Hillsboro is a Michigan limited liability company and a Member of Old Orchard. For purposes of establishing diversity jurisdiction, and upon information and belief, Arthur S. Veltman is the sole manager and member of Hillsboro, and is a Michigan citizen.

**ANSWER:** **Defendants admit only that Hillsboro is a Michigan limited liability company and Member of Old Orchard. The remaining allegations contained in this paragraph are denied because they are untrue.**

11. Defendant Arthur S. Veltman is a Michigan citizen.

**ANSWER:** **Admitted.**

## JURISDICTION AND VENUE

12. This Court has jurisdiction pursuant to 28 USC 1332, as the parties and/or their respective members and partners are citizens of different states, and the amount in controversy exceeds the sum value of $75,000, exclusive of costs and interest.

**ANSWER:** **This paragraph states a legal conclusion to which no response is required.**

13. Defendants are subject to personal jurisdiction in this judicial district, and transact business in this judicial district.

**ANSWER:** **Defendants admit that they transact business in this judicial district. The remainder of this paragraph states a legal conclusion to which no response is required.**

14. Venue is proper in this judicial district pursuant to 28 USC 1391(a).

**ANSWER:** **This paragraph states a legal conclusion to which no response is required.**

## BACKGROUND

**Agile Obtains an Ownership Interest in Old Orchard in
January 2008 and Becomes a Party to the Old Orchard Operating Agreement**

15.     On January 22, 2008, Agile purchased 4.1986 Common Units ("Units") in Old Orchard from Allied.  At that time, Old Orchard had 38.7671 total Units outstanding.  Agile's purchase of 4.1986 Units gave it a 10.8303% ownership interest in Old Orchard.  Before selling 4.1986 Units to Agile, Allied owned 30.5665 Units of Old Orchard, making Allied a 78.8464% majority interest holder of Old Orchard.  Allied owned its interest in Old Orchard through Old Orchard Equity Corp., an entity wholly owned by Allied.  Allied's sale of 4.1986 Units to Agile reduced Allied's total Units to 26.3679, and its percentage interest in Old Orchard to 68.0162%.

**ANSWER:     Admitted only that as of January 22, 2008, Old Orchard had 38.7671 total units outstanding, that Allied, through Old Orchard Equity Corp., owned 30.5665 of those units, and that Allied's sale of 4.1986 units to Agile reduced Allied's total units owned through Old Orchard Equity Corp. to 26.3679 and its corresponding percentage of interest in Old Orchard to 68.0162%.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations.**

16.     After Agile's purchase of 4.1986 Units in Old Orchard, Agile became a party to Old Orchard's Operating Agreement, and Old Orchard's books and records were formally amended and revised to reflect Agile's ownership interest in Old Orchard.  Thus, Old Orchard's books and records reflected the following equity and membership interests as of January 22, 2008:

| Member | Units | Percentage Interest |
|---|---|---|
| Allied (by and through Old Orchard Equity Corp.) | 26.3679 | 68.0162% |
| Defendant Apple Valley Holdings, Inc.[1] | 7.8692 | 20.2987% |

---

[1] Apple Valley shares the same street address as Old Orchard Brands, LLC.  Mark Saur is the President of Apple Valley, and Howard Veltman is the Vice President.

| | | |
|---|---|---|
| Defendant Howard Veltman | 0.3314 | 0.8548% |
| Plaintiff Agile Fund | 4.1986 | 10.8303% |
| **TOTAL** | | |
| **4 Members** | 38.7671 | 100.000% |

**ANSWER:    Admitted.**

17.    A material inducement for Agile's purchase of Old Orchard was its equity and membership percentage interest in the Company, determined in accordance with the ratio of the number of Units owned by Agile compared with the total number of Units owned by the other Members.  Agile's right to vote, participate in management decisions, receive distributions, and receive allocations of profits and losses from Old Orchard is determined according to its percentage ownership interest.  The Old Orchard Operating Agreement specifies the precise mechanics and procedure that must be followed before a Member's percentage interest in Old Orchard can be altered or reduced.

**ANSWER:    Agile's rights and obligations, if any, are determined in accordance with the Operating Agreement, the terms of which speak for themselves.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

**The Operating Agreement**

18.    The Operating Agreement provides each Member the preemptive right to purchase a sufficient number of any new Units issued to maintain its percentage membership interest in Old Orchard, determined by comparing the number of Units owned by Agile with the total number of Units owned by the other Members at the time of the new Issuance:

> [T]he Company hereby grants to each Member the right to purchase a portion of any future offering (an 'Eligible Offering') of any Units . . . which bears the same ratio to the aggregate amount

of securities covered by such Eligible Offering as the number of Units . . . owned by such Member bears to the total number of Units . . . owned by all of the Members at the time. Ex. 1, §17.1.

**ANSWER:** **The terms of the Operating Agreement speak for themselves, and to the extent Plaintiff's description of that agreement differs from its express terms, those allegations are denied because they are untrue.**

19. The Operating Agreement sets forth specific procedures that must be followed in order to effect proper notice to each Member that new Units will issue:

Section 17.2 <u>Notice of Eligible Offering</u>

Before issuing any securities pursuant to an Eligible Offering, the Company shall give written notice thereof to <u>each</u> Member. Such notice must specify the security or securities the Company proposes to issue and the consideration that the Company intends to receive for such security or securities being issued. For a period of 20 days following the delivery of such notice (the 'Notice Period'), such notice by the Company shall serve as an offer entitling each Member to elect to purchase, by written notice to the Company, up to the portion of the securities being sold in the Eligible Offering calculated in accordance with Section 17.1. . . . (emphasis added).

**ANSWER:** **The terms of the Operating Agreement speak for themselves, and to the extent Plaintiff's description of that agreement differs from its express terms, those allegations are denied because they are untrue.**

20. These formal notice procedures are important because notice thereunder constitutes a formal, legal offer by the Company to each Member, and it triggers a 20-day period during which each Member is entitled to accept the Company's formal, legal offer.

**ANSWER:** **The Operating Agreement speaks for itself and therefore, no further response is required. By way of further response, this paragraph states a legal conclusion**

to which no response is required. **Any remaining allegations contained in this paragraph are denied because they are untrue.**

21.     The Operating Agreement dedicates an entire Article (XII) to the issue, entitled "Notices:"

> Section 12.1 <u>Form; Delivery</u>.
>
> Whenever, under the provisions of . . . this Agreement, notice is required to be given to the Members . . ., it shall be construed to mean notice given in writing, by mail, facsimile or electronic mail, addressed to such . . . Member, at such postal address, facsimile number or electronic mail address, as applicable, as it appears on the records of the Company . . .

**ANSWER:     The terms of the Operating Agreement speak for themselves, and to the extent Plaintiff's description of that agreement differs from its express terms, those allegations are denied because they are untrue.**

22.     So important was providing formal written notice, in strict compliance with the provisions of the Operating Agreement, that it could not be waived absent a signed writing from the Member waiving it:

> Section 12.2 <u>Waiver</u>.
>
> Whenever any notice is required to be given under the provisions of . . . this Agreement, a written waiver thereof, signed by the Person or Persons entitled to said notice, whether before or after the time stated therein, shall be deemed to be equivalent to such notice.

**ANSWER:     The terms of the Operating Agreement speak for themselves. The remaining allegations contained in this paragraph are denied because they are untrue.**

23.     The required formal written notice was to be sent to <u>each</u> Member listed in the Member Schedule of the Operating Agreement. *See* Ex. 1, Schedule 1, Counterpart adding

Agile to Member Schedule. The parties considered it important that formal written notice be separately provided to each Member, regardless of any affiliations that may exist between or among the Members.

**ANSWER:    The allegations contained in this paragraph are denied because they are untrue.**

24.    The formal written notice, to which each Member is entitled, constitutes a formal offer by the Company to each Member, entitling each Member to purchase the new Units on the terms issued in the notice. *See* Ex. 1, §17.2 ("[S]uch notice by the Company shall serve as an offer entitling each Member to elect to purchase" a portion of the new Units in accordance with section 17.1).

**ANSWER:    The terms of the Operating Agreement speak for themselves, and to the extent Plaintiff's description of that agreement differs from its express terms, those allegations are denied because they are untrue. By way of further response, this paragraph states a legal conclusion to which no response is required.**

25.    The Operating Agreement provides that a Member who receives formal written notice of a new issuance of Units from the Company has the right, within 20 days following the proper delivery of such notice, to purchase its pro rata share of new Units "for the consideration and on the terms set forth in the Company's notice of such Eligible Offering." Ex 1, §17.3. Indeed, Old Orchard is prohibited from offering new Units to Members "for a purchase price or on other terms materially different from those set forth in the Company's notice of the relevant Eligible Offering. . . ." *Id.*

**ANSWER:** **The terms of the Operating Agreement speak for themselves, and to the extent Plaintiff's description of that agreement differs from its express terms, those allegations are denied because they are untrue.**

26. As one final measure to protect each Member from dilution of their respective percentage interests in Old Orchard, no new issuance of Units can occur, and no new Member can be added, without the approval of Old Orchard's Board of Managers. *See* Ex. 1 §10.9(h)-(i). At the time Agile purchased its Units from Allied, Allied representatives held three of the five Board of Manager positions. Defendants Mark Saur and Howard Veltman held the other two manager positions.

**ANSWER:** **The terms of the Operating Agreement speak for themselves, and to the extent Plaintiff's description of that agreement differs from its express terms, those allegations are denied because they are untrue. The remaining allegations contained in this paragraph are denied because they are untrue.**

27. The Operating Agreement provides that Michigan law governs the Operating Agreement. *See* Ex 1, §19.4. The Agreement also provides each Member with the right to specific enforcement of the Operating Agreement for any breach in connection with the transfer of interests thereunder or a violation of the notice provisions for new issuances in Article XVII. *See* Ex. 1, §§14.2, 14.3.

**ANSWER:** **The terms of the Operating Agreement speak for themselves, and to the extent Plaintiff's description of that agreement differs from its express terms, those allegations are denied because they are untrue.**

28.     Moreover, Old Orchard, its Members, and its management have fiduciary duties to all Old Orchard Members to provide formal and timely notice to each Member before new Units will issue.

**ANSWER:     This paragraph states a legal conclusion to which no response is required. By way of further response, the allegations contained in this paragraph are denied because they are untrue.**

**Allied Sells its Remaining Units to the Company on March 31, 2009, And Each Remaining Member's Percentage Interest Increases Accordingly – Agile Has a 33.8619% Interest in Old Orchard**

29.     On March 31, 2009, Allied entered into a Contribution and Redemption Agreement ("Redemption Agreement") to sell its remaining 26.3679 Units to Old Orchard. Agile was not a party to the Redemption Agreement.

**ANSWER:     Admitted.**

30.     By virtue of Allied's sale of its 26.3679 Units reflecting its 68.0162% ownership interest back to the Old Orchard, the remaining Unit holders owned 100% of the equity interest in the Company.

**ANSWER:     The allegations contained in this paragraph are denied because they are untrue.**

31.     Thus, the percentage Member interest of Old Orchard changes as follows:

| Member | Units | Member Percentage Interest With Allied | Member Percentage Interest After Allied Redemption |
|---|---|---|---|
| Allied | 26.3679 | 68.0162% | n/a |
| Defendant Apple Valley Holdings, Inc. | 7.8692 | 20.2987% | 63.4654% |

| Member | Units | Member Percentage Interest With Allied | Member Percentage Interest After Allied Redemption |
|---|---|---|---|
| Defendant Howard Veltman | 0.3314 | 0.8548% | 2.6728% |
| Plaintiff Agile Fund | 4.1986 | 10.8303% | 33.8619% |
| **TOTAL** | 39.1987 | 100.0000% | 100.0000% |

**ANSWER:** **The allegations contained in this paragraph are denied because they are untrue.**

32.     Thus, as of March 31, 2009, if any new Units were offered for sale, Agile had the right to buy enough of those new Units sufficient to maintain its 33.8619% membership interest in Old Orchard.

**ANSWER:** **The allegations contained in this paragraph are denied because they are untrue.**

**Defendants Breach the Operating Agreement by Issuing 70.9505 New Units to Old Orchard Management Without Providing the Required Notice to Agile, and Thus Depriving Agile of its Right to Purchase 33.8619%, or 24.0251 Units, of the 70.9505 New Units Issued**

33.     Defendants issued 70.9505 Units to defendants Lisa M. Saur Trust, Mark R. Saur Trust, Hillsboro, Howard Veltman, and Charlene Vredevelt without providing to Agile the notice required under the Operating Agreement.  By these actions, defendants unlawfully diluted and converted from Agile the majority of its 33.8619% ownership interest in Old Orchard.

**ANSWER:** **The allegations contained in this paragraph are denied because they are untrue.**

34.     Ironically, at the same time defendants were maneuvering to deprive Agile of its percentage interest in Old Orchard without proper notice, defendants were negotiating notice provisions in the Redemption Agreement specifically requiring formal and separate notice to each and every Old Orchard officer, Member, or affiliate, regardless of affiliation and regardless of whether the Old Orchard affiliates shared the same address, which some did.

**ANSWER:     The allegations contained in this paragraph are denied because they are untrue.**

35.     Without providing to Agile the notice required by the Operating Agreement, defendants issued to themselves 70.9505 new Units in Old Orchard.  The new issuance created almost three times the total number of outstanding Member-owned Units as existed before the new issuance, added several new members of Old Orchard (namely defendants Mark Saur, Lisa Saur, and Howard Veltman) with greater percentage ownership interests than Agile, the net effect of which was to dilute Agile's percentage ownership interest in Old Orchard from 33% to 5 %.

**ANSWER:     The allegations contained in this paragraph are denied because they are untrue.**

36.     The per-Unit purchase price at which defendants sold themselves the 70.9505 new Units was $273,273.75.  This price implied an equity value for Old Orchard that was significantly below the equity value at which other non-conflicted investors were ready, willing, and able to invest in Old Orchard, based on contemporaneous negotiations with Old Orchard's management.

**ANSWER:  Admitted only that the purchase price of the new units issued by Old Orchard on March 31, 2009 was $273,273.75 per unit.  The remaining allegations in this paragraph are denied because they are untrue.**

37.    The offering of additional Units to defendants was an "Eligible Offering" as defined in the Operating Agreement.  As a result, Agile was entitled under sections 12.1, 12.2, 17.1 and 17.2 of the Operating Agreement to notice and an opportunity to purchase 24.0251 of the 70.9505 new Units in order to exercise its right to maintain its 33.8619% membership interest in Old Orchard.  Agile was also entitled under section 17.3 to purchase these new Units at the same price and on the same terms as defendants.  By failing to provide Agile with the notice required by the Operating Agreement, and depriving Agile of the opportunity to purchase enough new Units to maintain its 33.8619% ownership interest, let alone at a price commensurate to that paid by defendants, defendants breached the Operating Agreement and their fiduciary duties to Agile.

**ANSWER:  The allegations contained in this paragraph are denied because they are untrue.**

38.    As a result of defendants' breaches of the Operating Agreement and their fiduciary duties to Agile, the investment and ownership landscape of Old Orchard was drastically altered in favor of defendants, and to the detriment of Agile, as follows:

| Members | Member-Owned Units | New Member Percentage Interest |
|---|---|---|
| Defendant Mark R. Saur Trust | 41.4475 | 49.7272% |
| Defendant Lisa M. Saur Trust | 18.2967 | 21.9517% |

| | | |
|---|---|---|
| Defendant Howard Veltman | 4.2191[2] | 5.0506% |
| Defendant Hillsboro Associates, LLC | 3.6593 | 4.3902% |
| Defendant Charlene Vredevelt | 3.6593 | 4.3902% |
| Defendant Apple Valley Holdings, Inc.[3] | 7.8692 | 9.4411% |
| Plaintiff Agile Fund | 4.1986 | 5.0373% |
| **TOTAL** | | |
| **7 Members** | 83.3497 | 100.000% |

**ANSWER:   The allegations contained in this paragraph are denied because they are untrue.**

39.     Agile relied in good faith on the terms of the Operating Agreement, and on defendants' concomitant duty to abide by the terms and the spirit of the Operating Agreement, including but not limited to the provisions relating to the material consideration for each Member – protection of their respective percentage ownership interests.

**ANSWER:   The allegations contained in this paragraph are denied because they are untrue.**

40.     By taking action to issue new Units without the proper notice to Agile, or offering Agile its right to purchase enough new Units to maintain its 33.8619% interest, defendants have breached the Operating Agreement, unlawfully reduced and diluted Agile's ownership and investment interest in Old Orchard, and have caused and will cause Agile to incur substantial monetary damages, including but not limited to the foregone payments and other interests in

---

[2] Combination of 0.3314 units pre-March 31, 2009, and 3.8877 new units issued on April 7, 2009.

[3] Defendant Mark Saur is the President of Apple Valley.  Defendant Veltman is the Vice President.

accordance with the unlawful reduction of its percentage ownership and investment interest in Old Orchard.

**ANSWER:** **The allegations contained in this paragraph are denied because they are untrue.**

Count I

**<u>DECLARATORY JUDGMENT</u>**

41.     Agile incorporates and re-alleges the allegations in paragraphs 1-40 herein.

**ANSWER:** **Defendants reallege and incorporate by reference their answers to the previous paragraphs as though fully set forth herein.**

42.     This Court may grant the declaratory relief sought herein pursuant to 28 USC 2201 and FED. R. CIV. P. 57. An actual controversy exists because of defendants' material breaches of the Operating Agreement, and the material breaches of fiduciary duties owed by them to Agile.

**ANSWER:** **This paragraph states a legal conclusion to which no response is required. The remaining allegations contained in this paragraph are denied because they are untrue.**

43.     Defendants: (a) materially breached the Operating Agreement by failing to provide proper notice, and thus a proper offering, under the Operating Agreement to Agile to purchase a sufficient number of new Units in order to maintain the percentage interest in Old Orchard to which Agile was entitled under the Operating Agreement; (b) materially breached the Operating Agreement by refusing to offer Agile its contractual right to purchase its percentage interest in the new Units at the same price at which Old Orchard sold the new Units to defendants; (c) by their actions of unlawfully and surreptitiously breaching the Operating Agreement in the manner described herein, defendants breached their fiduciary duties of good

17

faith and fair dealing owed to Agile; and (d) by their actions defendants have unlawfully misappropriated Agile's percentage equity and membership interest in Old Orchard.

**ANSWER: The allegations contained in this paragraph are denied because they are untrue.**

44.     This Court should enter a judgment declaring that: (a) defendants materially breached the Operating Agreement, breached their fiduciary duties owed to Agile, and unlawfully misappropriated Agile's percentage equity and ownership interests in Old Orchard; (b) defendants must specifically perform in accordance with the Operating Agreement and sell to Agile 24.0251 Units from the 70.9505 new Units issued by Old Orchard, or alternatively sufficient additional Units to restore Agile to its rightful ownership interest, at the same per-Unit price at which Old Orchard sold those new Units to defendants; and (c) that defendants pay the costs and fees Agile incurred in having to bring this action in response to defendants' intentional and material breaches of contract and fiduciary duty.

**ANSWER: The allegations contained in this paragraph are denied because they are untrue.**

**Count II**

**<u>SPECIFIC PERFORMANCE</u>**

45.     Agile incorporates and re-alleges the allegations in paragraphs 1-44 herein.

**ANSWER: Defendants reallege and incorporate by reference their answers to the previous paragraphs as though fully set forth herein.**

46.     This Court may order defendants to specifically perform under the Operating Agreement in accordance with the specific performance and other provisions of that Agreement, as well as under Michigan law. The actions taken by defendants above threaten to irrevocably

and unlawfully misappropriate from Agile the percentage membership interest in Old Orchard to which Agile is entitled under the Operating Agreement, and deprive Agile of its contractual and equitable right to purchase an amount of new Units, at the same price Old Orchard sold the new Units to defendants, sufficient for Agile to maintain the percentage equitable and membership interest in Old Orchard to which it is entitled.

**ANSWER:** **The allegations contained in this paragraph are denied because they are untrue.**

47. Defendants: (a) materially breached the Operating Agreement by failing to provide proper notice, and thus a proper offering, under the Operating Agreement to Agile to purchase a sufficient number of new Units in order to maintain the percentage interest in Old Orchard to which Agile was entitled under the Operating Agreement; (b) materially breached the Operating Agreement by refusing to offer Agile its right to purchase its percentage interest in the new Units at the same price which Old Orchard sold the new Units to defendants; (c) by their actions of unlawfully and surreptitiously breaching the Operating Agreement in the manner described herein, defendants breached their fiduciary duties of good faith and fair dealing owed to Agile; and (d) by their actions defendants have unlawfully misappropriated Agile's percentage equity and membership interest in Old Orchard.

**ANSWER:** **The allegations contained in this paragraph are denied because they are untrue.**

48. This Court should enter a decree ordering defendants to specifically perform their duties under the Operating Agreement as follows: (a) sell to Agile 24.0251 Units from the 70.9505 new Units issued by Old Orchard, or alternatively sufficient additional Units to restore Agile to its rightful ownership interest, at the same per-Unit price at which Old Orchard sold

those new Units; and  (b) pay the costs and fees Agile incurred in having to bring this action in response to defendants' intentional and material breaches of contract wand fiduciary duty.

**ANSWER:** **The allegations contained in this paragraph are denied because they are untrue.**

**Count III**

**<u>BREACH OF CONTRACT</u>**

49.     Agile incorporates and re-alleges the allegations in paragraphs 1-48 herein.

**ANSWER:** **Defendants reallege and incorporate by reference their answers to the previous paragraphs as though fully set forth herein.**

50.     Defendants breached the Operating Agreement by, among other things, (a) failing to provide proper notice, and thus a proper offering, under the Operating Agreement to Agile to purchase a sufficient number of new Units in order to maintain the percentage interest in Old Orchard to which Agile was entitled under the Operating Agreement;  (b) refusing to offer Agile its contractual right to purchase its percentage interest in the new Units at the same price at which Old Orchard sold the new Units to defendants; and  (c) failing to adhere to their fiduciary duties of good faith and fair dealing owed to Agile and included in the Operating Agreement by operation of law.

**ANSWER:** **The allegations contained in this paragraph are denied because they are untrue.**

51.     Defendants' breaches of the Operating Agreement were material.

**ANSWER:** **The allegations contained in this paragraph are denied because they are untrue.**

52. Agile suffered damages in excess of $75,000.00 as a result of defendants' material breaches of the Operating Agreement.

**ANSWER:    The allegations contained in this paragraph are denied because they are untrue.**

**Count IV**

**BREACH OF FIDUCIARY DUTY**

53. Agile incorporates and re-alleges the allegations in paragraphs 1-52 herein.

**ANSWER:    Defendants reallege and incorporate by reference their answers to the previous paragraphs as though fully set forth herein.**

54. Limited liability companies and their members owe fiduciary duties to their co-members to disclose all material facts before purchasing or diluting a co-member's interest in the company. So each Member of Old Orchard was required to put the best interests of their co-Members before their own, or at the very least on par with their own. Also, management of limited liability companies owe fiduciary duties to members. The Michigan Limited Liability Company Act requires Old Orchard management to discharge their duties fairly and in good faith as to each and every Member, including Agile. *See* MCL 450.4404(1).

**ANSWER:    This paragraph contains legal conclusions to which no response is required. The remaining allegations contained in this paragraph are denied because they are untrue.**

55. Defendants' conduct, set forth above, constitutes a breach and continuing breach of their fiduciary duties to Agile.

**ANSWER:    The allegations contained in this paragraph are denied because they are untrue.**

56.     Agile has been damaged, and continues to be damages, as a direct result of defendants' conduct.

**ANSWER:     The allegations contained in this paragraph are denied because they are untrue.**

57.     As a result of defendants' breaches of fiduciary duty, Agile suffered damages in excess of $75,000.00.

**ANSWER:     The allegations contained in this paragraph are denied because they are untrue.**

**Count V**

**<u>UNJUST ENRICHMENT</u>**

58.     Agile incorporates and re-alleges the allegations in paragraphs 1-57 herein.

**ANSWER:     Defendants reallege and incorporate by reference their answers to the previous paragraphs as though fully set forth herein.**

59.     Defendants have received a benefit from the unlawful misappropriation of Agile's percentage equity and membership interests in Old Orchard at a reduced price.

**ANSWER:     The allegations contained in this paragraph are denied because they are untrue.**

60.     It would be unjust to permit defendants to retain those benefits given their intentional and material misappropriation and breaches of contract and fiduciary duty.

**ANSWER:     The allegations contained in this paragraph are denied because they are untrue.**

61.     In order to remedy this unjust enrichment and to compensate Agile for its damages, this Court should compel defendants to sell to Agile 24.0251 Units from the 70.9505

new Units issued by Old Orchard, or alternatively sufficient additional Units to restore Agile to its rightful ownership interest, at the same per-Unit price at which Old Orchard sold those new Units to defendants; and pay the costs and fees Agile incurred in having to bring this action in response to defendants' intentional and material breaches of contract and fiduciary duty.

**ANSWER:** **The allegations contained in this paragraph are denied because they are untrue.**

WHEREFORE, Defendants respectfully request that this Court dismiss Plaintiff's Complaint with prejudice, or in the alternative, enter a judgment of no cause of action in their favor and against Plaintiff, and further request entry of an award of their costs and attorneys' fees, as well as all other relief to which they are entitled.

Respectfully submitted,

VARNUM
Attorneys for Defendants

Date: December 15, 2009          By:     s/Ronald G. DeWaard
                                         Ronald G. DeWaard (P44117)
                                         Aaron M. Phelps (P64790)
                                 Business Address & Telephone:
                                         Bridgewater Place, PO Box 352
                                         Grand Rapids, MI, 49501-0352
                                         Phone: (616) 336-6000
                                         Fax: (616) 336-7000
                                         rgdewaard@varnumlaw.com
                                         amphelps@varnumlaw.com

## AFFIRMATIVE AND OTHER DEFENSES

NOW COME Defendants, by and through their attorneys of record, and state that they may rely upon one or more of the following affirmative and other defenses:

1.      Plaintiff fails to state a cause of action upon which relief can be granted.

2.      Plaintiff's claims may be barred in whole, or in part, by the doctrine of waiver.

3.      Plaintiff's claims may be barred in whole, or in part, by the doctrine of release.

4.      Plaintiff's claims may be barred in whole, or in part, by the doctrine of estoppel.

5.      Plaintiff's claims may be barred in whole, or in part, by the doctrine of acquiescence and/or consent.

6.      Plaintiff's claims may be barred in whole, or in part, by the doctrine of unclean hands.

7.      Plaintiff's claims may be barred in whole, or in part, by the doctrine of laches.

8.      Plaintiff's claims may be barred in whole, or in part, by the doctrine of ratification.

9.      Plaintiff's claims may be barred in whole, or in part, by the doctrines of impossibility and/or impracticability.

10.     Plaintiff's claims may be barred by existence and terms of the corporate governing documents, including the Third Amended and Restated Operating Agreement of Old Orchard Brands LLC ("Operating Agreement").

11.     Plaintiff's claims may be barred by the existence and terms of the Contribution and Redemption Agreement.

12.     Plaintiff's damages may be barred by its failure to mitigate its claimed damages, if any.

13.     Plaintiff lacks standing to assert at least some of its claims.

14.     Defendant, Arthur Veltman, is improperly joined in this action as he is not a signatory to the Contribution and Redemption Agreement, nor is he individually a member of Old Orchard Brands LLC.

15.     Plaintiff's claims may be barred in whole, or in part, because they are asserted against Defendants who are not parties to the Operating Agreement.

16.     Plaintiff's claimed damages, if any, are the fault and responsibility of others, including, but not necessarily limited to, Allied Capital Corporation and Old Orchard Equity Corp.

17.     Plaintiff's claims may be barred in whole, or in part, by its actual and/or constructive notice of the details of the March 31, 2009 transaction.

18.     Plaintiff was provided with the notice that it alleges was required, but nonetheless failed to timely exercise its claimed preemptive rights.

19.     Plaintiff's claims are barred because Old Orchard's redemption of units from Old Orchard Equity Corp. could not have occurred before Old Orchard issued new units because the redemption would not yet have been funded.

20.     Plaintiff's claims are barred because the March 31, 2009 transaction was authorized and formally approved by Old Orchard's Board of Managers, which was controlled by Plaintiff's manager and affiliate, Allied Capital Corporation.

21.     Plaintiff's claims may be barred in whole, or in part, by the doctrine of unjust enrichment.

22.     Plaintiff's claims may be barred in whole, or in part, by the business judgment rule.

23.     Plaintiff's claims may be barred in whole, or in part, by the provisions of the Michigan Limited Liability Company Act, MCLA 450.4101, *et seq*.

Defendants do not assume the burden of proof with respect to any of the foregoing defenses and reserve the right to amend these Affirmative and Other Defenses.

VARNUM
Attorneys for Defendants


Date:   December 15, 2009              By:     s/Ronald G. DeWaard
                                               Ronald G. DeWaard (P44117)
                                               Aaron M. Phelps (P64790)
                                       Business Address & Telephone:
                                               Bridgewater Place, PO Box 352
                                               Grand Rapids, MI, 49501-0352
                                               Phone:  (616) 336-6000
                                               Fax:  (616) 336-7000
                                               rgdewaard@varnumlaw.com
                                               amphelps@varnumlaw.com

## JURY DEMAND

Defendants demand a trial by jury of all issues so triable.

V<small>ARNUM</small>
Attorneys for Defendants

Date:  December 15, 2009

By:     s/Ronald G. DeWaard
        Ronald G. DeWaard (P44117)
        Aaron M. Phelps (P64790)
Business Address & Telephone:
        Bridgewater Place, PO Box 352
        Grand Rapids, MI, 49501-0352
        Phone:  (616) 336-6000
        Fax:  (616) 336-7000
        rgdewaard@varnumlaw.com
        amphelps@varnumlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 15, 2009, I electronically filed the foregoing paper with

the Clerk of the Court using the ECF system which will send notification of such filing to the

following:

> Matthew P. Allen
> MILLER, CANFIELD, PADDOCK AND STONE, PLC
> 840 W. Long Lake Road – Suite 200
> Troy, MI 48098
> *Counsel for Plaintiff*

> s/Ronald G. DeWaard
> Ronald G. DeWaard (P44117)
> Aaron M. Phelps (P64790)
> VARNUM
> Bridgewater Place, PO Box 352
> Grand Rapids, MI, 49501-0352
> Phone: (616) 336-6000
> Fax: (616) 336-7000
> rgdewaard@varnumlaw.com
> amphelps@varnumlaw.com

3005812_1.DOC