UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AGILE FUND I, LLC,

    Plaintiff,

v.

OLD ORCHARD BRANDS LLC, APPLE
VALLEY HOLDINGS, INC., HOWARD
VELTMAN, MARK R. SAUR, LISA M. SAUR,
HILLSBORO ASSOCIATES, LLC, ARTHUR S.
VELTMAN, and CHARLENE VREDEVELT,

    Defendants
_____

HILLSBORO ASSOCIATES, LLC, CHARLENE
VREDEVELT, OLD ORCHARD BRANDS LLC,
APPLE VALLEY HOLDINGS, INC., HOWARD
VELTMAN, MARK R. SAUR, and LISA M.
SAUR,

    Third-Party Plaintiffs,

v.

ALLIED CAPITAL CORPORATION
and OLD ORCHARD EQUITY CORP.,

    Third-Party Defendants.
_____/

Case No.  1:09-cv-958

HON. JANET T. NEFF

## OPINION

    Pending before the Court is Third-Party Defendants' FED. R. CIV. P. 12(b)(6) Motion to Dismiss First Amended Third-Party Complaint (Dkt 33).

This case was initiated by Plaintiff Agile Fund I, LLC (Agile), an investment fund that owns a minority interest in Old Orchard Brands LLC (Old Orchard), against Old Orchard and other owners (Defendants). Agile's Complaint alleges breach of a preemptive rights provision in the Old Orchard Operating Agreement (Compl., Dkt 1, Ex. 1). The claim arises from a 2009 transaction involving Third-Party Defendants, Allied Capital and its wholly owned subsidiary, Old Orchard Equity Corp. (OOEC) (collectively, Allied), as well as Plaintiff Agile. Allied owned a controlling interest in Old Orchard at the time. Old Orchard's current owners are Third-Party Plaintiffs[1] (with the obvious exception of Old Orchard) and Agile.

Third-Party Plaintiffs brought Allied into this action and have filed a First Amended Third-Party Complaint (Dkt 28). Third-Party Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), claiming failure to state a viable claim for breach of warranties (Dkts 33, 34). Third-Party Plaintiffs filed a Response (Dkt 36), and Third-Party Defendants filed a Reply (Dkt 35). This motion is being decided without oral argument. *See* W.D. Mich. LCivR 7.2(d). After careful consideration of the parties' briefs, the Court denies Third-Party Defendants' Motion to Dismiss.

## I. BACKGROUND

Old Orchard is a business that started in the late 1970's and grew from a local apple farming and processing operation in Sparta, Michigan, into a major national frozen and bottled juice brand (Dkt 28, F. Am. Third-Party Compl., ¶ 13). In 2007, Allied, a private equity firm based in Washington D.C., bought a majority equity interest (approximately 78%) in Old Orchard through OOEC and entered into the Third Amended and Restated Operating Agreement (Operating

---

[1]Mark and Lisa Saur are proceeding individually and as trustees of their respective trusts, which hold ownership interests in Old Orchard.

Agreement) (Dkt 16-2) with the minority members. Following Allied's purchase, the Old Orchard Board of Managers was comprised of four Allied employees and one minority representative. [Dkt 28, F. Am. Third-Party Compl., ¶¶ 13-18]

In 2008, Allied sold some of its units to Agile, an investment fund solely managed by Allied. Agile held a 10.8303% interest and became a party to the Operating Agreement. Allied also transferred $1.4 million of its subordinated debt with Old Orchard to Agile. [*Id.,* ¶¶ 24, 26, 28; Dkt 1, Compl., ¶ 16]

Allied was hard hit by the financial crisis of 2008–2009 and, in early March 2009, it proposed to the minority member, Mark Saur, that it redeem its stake in Old Orchard. Allied told Saur it required immediate cash and insisted that the transaction close within weeks and no later than the end of the month. Allied set the terms and contemplated, executed and consummated the transaction. The funds needed to buy Allied's units and to pay off its and Agile's loans to Old Orchard were raised by issuing new units to Third-Party Plaintiffs. These funds redeemed Allied's OOEC-owned units and paid off the debt that Old Orchard owed to Allied and Agile. The transaction was completed pursuant to the Contribution and Redemption Agreement (Redemption Agreement) (Dkt 16-4) dated March 31, 2009. While Agile did not redeem its ownership interest, the debt Agile held was paid off in the transaction. Allied acted as Agile's manager and spoke on Agile's behalf throughout the transaction, directing that the debt pay-off funds, including those owed to Agile, be wired to Allied. [F. Am. Third-Party Compl., ¶¶ 34-47, 82]

Allied continued to speak for, and act on behalf of, Agile after the March 31, 2009 closing when Agile raised an objection to the transaction (*id.,* ¶¶ 62-68). In July 2009, Allied wrote Old Orchard, on behalf of Agile, objecting to lack of notice to Agile of the March 31, 2009, transaction

and alleging that Old Orchard had issued the new units in violation of Agile's preemptive rights under Article 17 of the Operating Agreement, which requires notice of security offerings (*id.,* ¶¶ 69-70; *see* Compl. Ex. 1, Art. XVII). Agile then filed its Complaint in this lawsuit, claiming that Old Orchard breached the Operating Agreement by failing to give requisite notice and thus depriving Agile of an opportunity to purchase new units (F. Am. Third-Party Compl., ¶¶ 69, 72). Agile is seeking a declaratory judgment, specific performance and money damages. Agile named all of those involved in the March 31, 2009 transaction, except Allied, as defendants.

Third-Party Plaintiffs' Complaint against Allied seeks indemnification and a declaration of rights. It is based on Allied's alleged breach of its warranties in the Redemption Agreement. In their motion, Third-Party Defendants argue that the contract terms at issue cannot reasonably be construed to allow Third-Party Plaintiffs to state a claim.

## II. ANALYSIS

### A. Standard of Review

When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept all well-pled allegations of the complaint as true and construe them in the light most favorable to Plaintiff. *See Bishop v. Lucent Techs., Inc.,* 520 F.3d 516, 519 (6th Cir. 2008). As the Supreme Court stated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a motion to dismiss will be denied only where the "[f]actual allegations [are] enough to raise a right for relief above the speculative level" on the assumption that all of the complaint's allegations are true. *Id.* at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). The *Ashcroft* Court explained that "[a]

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility . . . . Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Making a determination of plausibility "is context-specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 1950. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 1949.

In diversity actions, the Court applies the substantive law of the forum state. Michigan statutes and case law favor the enforcement of contractual forum-selection clauses and choice-of-law provisions. *Robert A. Hansen Family Trust v. FGH Indus., LLC,* 760 N.W.2d 526, 532 (Mich. Ct. App. 2008) (citing MICH. COMP. LAWS § 600.745 (3)). The contract document at issue, the Redemption Agreement, contains a choice-of-law provision (Dkt 16-4, § 7.7), designating New York state law as the controlling law. In accordance with Michigan law, this Court will apply New York law to the substance of this motion.

> New York applies a standard approach to contract interpretation.
>
> Whether a contract is ambiguous is a question of law for the court and is to be determined by looking "within the four corners of the document" (*Kass v. Kass*, 91 N.Y.2d 554, 566, 673 N.Y.S.2d 350, 696 N.E.2d 174 [1998]). A contract is unambiguous if "on its face [it] is reasonably susceptible of only one meaning" (*Greenfield v. Philles Records*, 98 N.Y.2d 562, 570, 750 N.Y.S.2d 565, 780 N.E.2d 166 [2002]); []. Conversely, "[a] contract is ambiguous if the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings" (*Feldman v. National Westminster Bank*, 303 A.D.2d 271, 760 N.Y.S.2d 3 (2003), *lv. denied* 100 N.Y.2d 505, 763 N.Y.S.2d 811, 795 N.E.2d 37 [2003] [internal quotation marks and citations omitted]).

*Triax Capital Advisors, LLC v. Rutter*, 921 N.Y.S.2d 54, 56-57 (N.Y. App. Div. 2011). A court interpreting a contract, "must consider the entire writing and not view particular words in isolation." *Wachter v. Kim*, 920 N.Y.S.2d 66, 70 (N.Y. App. Div. 2011). "A contract is unambiguous if the language it uses has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Greenfield v. Philles Records, Inc.,* 780 N.E.2d 166, 170-71 (N.Y. 2002) (quoting *Breed v. Ins Co. of N. Am.,* 385 N.E.2d 1280, 1282 (N.Y. 1978). In determining whether an agreement contains an ambiguity, the court should:

> "consider the relation of the parties and the circumstances under which it was executed. Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby. . . ."

*Kass v. Kass*, 696 N.E.2d 174, 180-81 (N.Y. 1998) (citation omitted).

### B. Discussion

The issue before the Court is whether, if Defendants are found liable to Agile for breach of the Operating Agreement, Allied can be found liable to Third-Party Plaintiffs for breach of warranty. Third-Party Plaintiffs' claims, as set forth in their Amended Complaint (Dkt 28), rely on Sections 3.2 and 3.4(a) of the Redemption Agreement (Dkt 16-4; *see* Dkt 28, ¶¶ 76-77). Article III sets forth the Representations and Warranties of Seller, and the pertinent sections provide:

> 3.2 **Authorization: Enforceable Agreement**. The execution, delivery and performance of this Agreement by Seller and Allied has been duly authorized by all necessary actions and proceedings, and Seller and Allied each has all requisite power and authority to execute and deliver this Agreement and to consummate the transactions contemplated by this Agreement. This Agreement constitutes the valid and binding obligation of Seller and Allied, and is enforceable against Seller and Allied in Accordance with its terms.

3.4 **No Conflict**.

(a) The execution and delivery of this Agreement by Seller and Allied does not, and the consummation of the transactions contemplated by this Agreement by Seller and Allied will not (i) conflict with, or result in any violation or breach of, or require any consent under, any provision of any of the Organizational Documents of the Company or the Seller; (ii) conflict with, or result in any violation or breach of, constitute (with or without notice or lapse of time, or both) a default or require a consent or waiver under, any Contract to which Seller is a party; . . . .[2]

In support of its Motion to Dismiss, Allied argues that neither of these provisions can possibly be read to make Allied liable to Third-Party Plaintiffs because the warranties are limited to conduct "by Allied." Allied claims that its action did not cause any breach and insists that the alleged breach was caused by Old Orchard. It characterizes its role in the transaction as limited to selling its units and liquidating its investment. Allied's reading, however, addresses particular words in the Redemption Agreement in isolation and not in light of the obligations as a whole.

Allied insists that the Redemption Agreement unambiguously restricts Allied's warranty to the specific actions it took to close on the transaction as Seller. Both of these sections of the Redemption Agreement refer, however, not only to the transactions to be performed at closing but to "the transactions <u>contemplated</u> by this Agreement" (Dkt 16-4, §§ 3.2, 3.4) (emphasis added). These provisions, in referring to contemplated actions, arguably include any action or inaction of which Allied was aware that was part of the overall transaction. Allied was the principal player in the transaction. It instigated and orchestrated the sale and transfer of ownership. As majority owner, in control of the Board of Managers, Allied introduced the proposed sale, dictated its timetable, handled the details, and spoke for, and acted on behalf of, Agile throughout the

---

[2]"Seller" is defined as OOEC, whose obligations Allied guaranteed in the Redemption Agreement (Dkt 16-4, ¶ 6.7).

7

transaction. As outlined in the Redemption Agreement, (Dkt 16-4, §§ 1.1–1.4), the transaction included Old Orchard raising funds by issuing new units to those supplying the funds (which did not include Agile) and then using the funds to redeem Allied OOEC-owned shares and pay down the debt owed to Agile and Allied via a payment made to Allied. They also included a vote of approval of the sale by the Allied-dominated pre-sale Board of Managers of Old Orchard (F. Am. Third-Party Compl., ¶¶ 57–58; Dkt 36-5).

Plaintiff Agile's Complaint alleges lack of proper notice of the transaction as a breach of the Old Orchard Operating Agreement. Section 3.4 of the Redemption Agreement directly mentions breach of the Organizational Documents of the Company, which includes the Operating Agreement. Section 3.4 provides that "consummation of the transactions contemplated by this Agreement by Seller and Allied will not . . . result in any . . . breach of . . . any provision of any of the Organizational Documents of the Company . . . ." This language can be read to cover transactions contemplated by Allied, whether or not necessarily performed by Allied, in light of the scope of the transaction, the parties involved, and Allied's role and obligations, when viewed in context. Considering as facts for the purposes of this motion the alleged actions Allied took or failed to take, as Allied contemplated, introduced, orchestrated, and consummated the transactions at issue, the language of the Redemption Agreement provides a basis for an inference of liability.

With respect to Section 3.2 of the Redemption Agreement, which focuses on Allied's authority to consummate the transaction, Allied maintains that it provides no basis for liability because it applies only to the "execution, delivery, and performance of the Agreement" and simply warrants that Allied had the power and authority to complete the sale (Dkt 34 at 7). Third-Party Plaintiffs claim that Allied breached Section 3.2 by failing to notify Agile of the sale transactions

and obtain its consent and thus was not "duly authorized by all necessary actions and proceedings" (Dkt 36 at 20-22). They point to New York law regarding agent/principal relations and maintain that Allied had a duty to obtain Agile's consent to a transaction that it orchestrated to close in such a short time period that the 20-day notification period could not be met, because Allied stood to profit from the transaction at Agile's expense. *See Brenmer Indus., Inc. v. Hattie Carnegie Jewelry Enters., Ltd.*, 418 N.Y.S.2d 416, 417 (N.Y. App. Div. 1979). Allied argues that an allegation that Allied breached its fiduciary duty to Agile does not give Third-Party Plaintiffs standing to assert claims on Agile's behalf or allow them to implead Allied. Third-Party Plaintiffs are, however, claiming that Allied's breach of its duty to Agile—that it not engage in self-dealing without consent—created a liability under Section 3.2 of the Redemption Agreement where Allied warranted to buyers that it was duly authorized to execute the Redemption Agreement and consummate the contemplated transactions. Third-Party Plaintiffs have thus tied its claim to contract language that can reasonably be read to include the duty they allege was breached by Allied.

Under the standards for review of Rule 12(b)(6) motions set forth by the Supreme Court, Third-Party Plaintiffs' allegations rely on a reasonable interpretation of the relevant contract document and, thus, state plausible claims for relief.

### III. CONCLUSION

For the foregoing reasons, Third-Party Defendants' Motion to Dismiss (Dkt 33) is denied. An Order will be entered consistent with this Opinion.

DATED: July 13, 2011

/s/ Janet T. Neff
JANET T. NEFF
United States District Judge