UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

_____

AGILE FUND I, LLC, a Delaware Limited
Liability Company,

             Plaintiff,                                 Case No. 1:09-cv-958

v                                            HON. JANET T. NEFF

OLD ORCHARD BRANDS LLC, a Michigan
Limited Liability Company; APPLE VALLEY
HOLDINGS, INC., a Michigan corporation;
HOWARD VELTMAN; MARK R. SAUR,
individually and as trustee of the MARK R.
SAUR TRUST; LISA M. SAUR, individually
and as trustee of the LISA M. SAUR TRUST;
HILLSBORO ASSOCIATES, LLC, a
Michigan Limited Liability Company;
ARTHUR S. VELTMAN; and CHARLENE
VREDEVELT,

**THIRD-PARTY DEFENDANTS'
ANSWER, AFFIRMATIVE AND
OTHER DEFENSES TO FIRST
AMENDED THIRD-PARTY
COMPLAINT, COUNTERCLAIM
AND JURY DEMAND**

             Defendants,

And

OLD ORCHARD BRANDS LLC, a Michigan
Limited Liability Company; APPLE VALLEY
HOLDINGS, INC., a Michigan corporation;
HOWARD VELTMAN; MARK R. SAUR,
individually and as trustee of the MARK R.
SAUR TRUST; LISA M. SAUR, individually
and as trustee of the LISA M. SAUR TRUST;
HILLSBORO ASSOCIATES, LLC, a
Michigan Limited Liability Company;
and CHARLENE VREDEVELT,

             Third-Party Plaintiffs/Counter-Defendants,

v

ALLIED CAPITAL CORPORATION, a
Maryland corporation, and OLD ORCHARD
EQUITY CORP., a Delaware corporation,

             Third-Party Defendants/Counter-Plaintiffs.
_____/

## THIRD-PARTY DEFENDANTS' ANSWER, AFFIRMATIVE AND OTHER DEFENSES TO FIRST AMENDED THIRD-PARTY COMPLAINT, COUNTERCLAIM AND JURY DEMAND

Third-Party Defendants, Allied Capital Corporation and Old Orchard Equity Corp., by their counsel, Miller Johnson, answer and respond to Defendants and Third-Party Plaintiffs' First Amended Third-Party Complaint as follows:

Third-Party Defendants do not understand the descriptive headings to be allegations to which a response is required.  To the extent they are intended as allegations, Third-Party Defendants rely on and incorporate their answers to the paragraphs following each heading.

1.     Third-Party Plaintiff, Old Orchard Brands LLC ("Old Orchard"), is a Michigan limited liability company. Old Orchard's members and respective state citizenships are set forth below.

**ANSWER:   Third-Party Defendants admit that Old Orchard is a Michigan limited liability company, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 1.**

2.     Third-Party Plaintiff, Apple Valley Holdings, Inc. ("AVH"), is a Michigan corporation with its principal place of business in Kent County, Michigan. AVH is a member of Old Orchard.

**ANSWER:   Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 2.**

3.     Third-Party Plaintiff, Mark R. Saur, is an individual domiciled in the State of Michigan and is the Trustee of the Mark R. Saur Trust ("Mark Saur Trust"). The Mark Saur Trust is a member of Old Orchard.

**ANSWER:   Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 3.**

2

4.      Third-Party Plaintiff, Lisa M. Saur, is an individual domiciled in the State of Michigan and is the Trustee of the Lisa M. Saur Trust ("Lisa Saur Trust"). The Lisa M. Saur Trust is a member of Old Orchard.

**ANSWER:     Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 4.**

5.      Third-Party Plaintiff, Howard Veltman ("Veltman"), is an individual domiciled in the State of Michigan. Veltman is a member of Old Orchard.

**ANSWER:     Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 5.**

6.      Third-Party Plaintiff, Charlene Vredevelt, is an individual domiciled in the State of Michigan. Charlene Vredevelt is a member of Old Orchard.

**ANSWER:     Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 6.**

7.      Third-Party Plaintiff, Hillsboro Associates, LLC ("Hillsboro") is a Michigan limited liability company. Hillsboro's members are Howard Veltman, Arthur S. Veltman, as Trustee of the Arthur S. Veltman Trust UAD August 11, 1986, as amended, Donna M. Veltman, as Trustee of the Donna M. Veltman Trust UAD August 11, 1986, as amended, Warren A. Veltman and Elizabeth A. Veltman. Arthur S. Veltman, Donna M. Veltman, Warren A. Veltman, and Elizabeth A. Veltman are individuals domiciled in the State of Michigan. Hillsboro is a member of Old Orchard.

**ANSWER:     Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 7.**

8.      Third-Party Defendant, Allied Capital Corporation ("Allied"), is, upon information and belief, a Maryland corporation with its principal place of business in Washington, D.C.

**ANSWER:    Third-Party Defendant, Allied Capital Corporation ("Allied") was a Maryland corporation with its principal place of business in Washington, D.C., and was**

3

merged into Ares Capital Corporation, also a Maryland corporation, on or about April 1, 2010.

9.     Third-Party Defendant, Old Orchard Equity Corp. ("OOEC"), is, upon information and belief, a Delaware corporation with its principal place of business in Washington, D.C. OOEC is, upon information and belief, an affiliate company of Allied.

**ANSWER:   Third-Party Defendants admit that OOEC is a Delaware corporation with its principal place of business in Washington, D.C., and that its majority shareholder is Allied, and deny any inconsistent allegation of paragraph 9.**

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Third-Party Plaintiffs and Third-Party Defendants and the amount in controversy exceeds $75,000, exclusive of costs and interest.

**ANSWER:   Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10.**

11.     Allied and OOEC have conducted substantial and continuous business in the State of Michigan, including management of Old Orchard in the State of Michigan and they are therefore subject to the personal jurisdiction of this Court.

**ANSWER:   Third-Party Defendants do not contest the personal jurisdiction of this Court, assuming there is subject matter jurisdiction.**

12.     Venue is proper pursuant to 28 U.S.C. 1391(a).

**ANSWER:   Third-Party Defendants do not contest venue, assuming there is subject matter jurisdiction.**

13.     Old Orchard's business developed out of an apple farming and processing operation in Sparta, Michigan in the late 1970s. Mark Saur took over the business in the late 1980s and he and his management team grew the company from a small juice manufacturer with a limited offering to the second largest frozen juice and fourth largest bottled juice brand in the United States.

**ANSWER:   Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 13.**

4

14.    In early 2007, Allied became interested in buying a controlling interest in Old Orchard and by February 2007, the parties had reached a deal. That deal was consummated with the execution of a Contribution and Redemption Agreement dated April 30, 2007 (the "2007 Agreement"). Pursuant to the 2007 Agreement, Allied, through its wholly owned subsidiary OOEC, acquired approximately 78% of Old Orchard's outstanding units. The remaining Old Orchard units were owned by AVH, Veltman, and a fourth member, Michael McDonald ("McDonald") (whose units were later redeemed by Old Orchard).

**ANSWER:**   **Third-Party Defendants incorporate their answer to paragraph 9 and admit the remaining allegations of paragraph 14.**

15.    In connection with the April 2007 transaction, OOEC, AVH, Veltman, and McDonald executed the Third Amended and Restated Operating Agreement of Old Orchard ("Operating Agreement"). *See* Exhibit 1. The Operating Agreement dictated the rights and obligations of the various members of Old Orchard.

**ANSWER:**   **Admitted.**

16.    Section 8.1 of the Operating Agreement created a Board of Managers, which would exercise control over Old Orchard:

> (a) General Powers. The business of the Company shall be managed by or under the direction of its Board of Managers, which may exercise or cause to be exercised all powers of the Company and perform or cause to be performed all lawful acts and things which are not by the Act, the Articles of Organization or this Agreement directed or required to be exercised or performed by the Members. The Board of Managers shall have full power to carry out the objects and purposes of the Company and to authorize the execution and delivery of instruments and other documents in the name of and on behalf of the Company which they may deem necessary or desirable.

**ANSWER:**   **The Board of Managers were subject to all the provisions of the Operating Agreement and applicable law, and the provisions of the Operating Agreement speak for themselves.  To the extent the allegations of paragraph 16 are inconsistent with those provisions and applicable law, they are denied.**

17.     Section 8.1(b) of the Operating Agreement set the initial number of managers for the Board of Managers at five and required that four of the five managers be "OOEC Designees." Section 8.1(b) also designated John Shulman, Lee Lesley, Craig Hille, Mark Ratterman and Mark Saur as the initial managers. Shulman, Lesley, Hille and Ratterman were all OOEC designees.

**ANSWER:**   **The provisions of the Operating Agreement speak for themselves.  To the extent the allegations of paragraph 17 are inconsistent with those allegations, they are denied.  Third-Party Defendants admit the allegations of the last sentence of paragraph 17.**

18.     Upon information and belief, although Shulman, Lesley, Hille and Ratterman were OOEC designees, they were all employees of Allied. Upon information and belief, OOEC had no employees of its own. It was simply an investment vehicle wholly owned and controlled by Allied.

**ANSWER:**   **Third-Party Defendants admit the allegations of the first and second sentences of paragraph 18.  Third-Party Defendants affirmatively state that OOEC was a separate corporation with officers and directors, incorporate by reference their answer to paragraph 9, and deny any inconsistent allegations of paragraph 18.**

19.     Thus, by virtue of the Operating Agreement and its appointment of its designees to the Board of Managers, Allied, through OOEC, had complete control over Old Orchard.

**ANSWER:**   **Denied.**

20.     As part of gaining control of Old Orchard, Allied required the company to enter into a Management Agreement with one of Allied's wholly owned subsidiaries, A.C. Corporation ("A.C."). A.C.'s obligations under the Management Agreement were vaguely described as "consulting," "strategic planning," "managerial assistance," and the like. Old Orchard was obligated to pay A.C. $950,000 per year under the Management Agreement in exchange for these services.

**ANSWER:   Third-Party Defendants admit there was a Management Agreement, the provisions of which speak for themselves.  Third-Party Defendants deny the allegations of paragraph 20 to the extent they are inconsistent with those provisions and deny all remaining allegations of paragraph 20.**

21.     As part of its original purchase of Old Orchard, Allied also had Old Orchard enter into loan agreements with it. Old Orchard's original senior debt with Allied totaled $23,500,000 with interest accruing at a floating rate. The original subordinated debt totaled $19,300,000 and obligated Old Orchard to pay 18% interest per year.

**ANSWER:   Third-Party Defendants admit that there were loan agreements with Allied and other lenders, the provisions of which speak for themselves, and Third-Party Defendants deny the allegations of paragraph 21 to the extent they are inconsistent with those provisions, and deny all remaining allegations of paragraph 21.**

22.     Through the Board of Managers, Allied and OOEC managed and controlled Old Orchard. Allied requested and received, among other things, daily business reports from Old Orchard's on-site management team. Allied was in regular telephone and email contact with Saur, who remained Old Orchard's CEO and Veltman, who remained Old Orchard's CFO.

**ANSWER:   Third-Party Defendants admit that OOEC had a majority ownership interest of Old Orchard, which resulted in majority Board representation; that Saur was Old Orchard's CEO and Veltman was Old Orchard's CFO; and that there were periodic verbal and written reports provided by Old Orchard management to OOEC and Allied. Third-Party Defendants deny all remaining allegations of paragraph 22.**

23.     Allied exercised its control over Old Orchard in numerous ways, including, but not limited to, setting executive management bonuses and other compensation, analyzing and approving Old Orchard contracts and managing Old Orchard's lending relationships.

**ANSWER:   Third-Party Defendants incorporate by reference their answer to paragraph 22, and deny all remaining and/or inconsistent allegations of paragraph 23.**

24.     In January 2008, Allied notified Veltman, Old Orchard's CFO, that it had sold some of its units in Old Orchard to Agile Fund I, LLC ("Agile"). *See* **Exhibit 2.** Allied also

transferred approximately $1.4 million of its subordinated debt with Old Orchard to Agile, thereby making Agile a creditor of Old Orchard.

**ANSWER:   Third-Party Defendants admit the allegations of paragraph 24, but affirmatively state that Agile had both debt and equity interests in Old Orchard.**

25.     In its letter to the company, Allied described Agile as an "affiliate of [OOEC] and Allied." *Id.*

**ANSWER:   Admitted.**

26.     In fact, Agile is nothing more than an investment fund solely managed by Allied.  According to public filings by Allied, it also owned more than 25% of Agile.

**ANSWER:   Third-Party Defendants deny the allegations of paragraph 26, and affirmatively state that Agile is an investment fund, largely owned by the Goldman Sachs Private Equity Group.  Agile was managed by Allied.  Allied's ownership interest in Agile was less than one percent.**

27.     Agile's corporate filings show that it was not even formed until January 4, 2008, shortly before it acquired a stake in Old Orchard. Further, the Certificate of Formation for Agile was signed by John Fruehwirth, who was a managing director of Allied.

**ANSWER:   Admitted.**

28.     Allied was the sole manager of Agile.

**ANSWER:   Third-Party Defendants affirmatively state that Agile is a limited liability company, that Allied managed the assets of Agile, and they incorporate by reference their answer to paragraph 26.  Third-Party Defendants deny all remaining and/or inconsistent allegations of paragraph 28.**

29.     Upon information and belief, the only management of Agile are officers, directors, or employees of Allied.

**ANSWER:   Third-Party Defendants deny the allegations of paragraph 29 and incorporate by reference their answer to paragraph 28.**

30.     Upon information and belief, Agile has no employees or independent business operations.

**ANSWER:**   **Denied.**

31.    Upon information and belief, to the extent Agile has any office space at all, it merely shares or uses Allied's office space. Agile does not have a listed phone number of its own.

**ANSWER:**   **Admitted that Allied managed Agile from Allied's office space.**

32.    Allied does not deal with Agile at arm's length.

**ANSWER:**   **Denied.**

33.    John Shulman confirmed with Old Orchard management that Agile was an investment fund managed by Allied. In fact, Shulman specifically told Veltman that Allied controlled Agile. During the subsequent 14 months, Old Orchard did not receive any communications, directions or requests from Agile, other than what came to it from Allied.

**ANSWER:**   **Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 33.**

34.    The financial crisis of 2008 and early 2009 hit Allied particularly hard and its stock price dropped significantly.

**ANSWER:**   **Third-Party Defendants admit that in 2008 – 2009 its stock price, like many other publicly traded companies, dropped for many reasons and deny all inconsistent allegations of paragraph 34.**

35.    In order to raise desperately needed cash, Allied had discussions with Saur in early March 2009 and offered to sell its OOEC stake in Old Orchard. Allied made clear to Saur that its financial problems required immediate cash and that any deal would need to be closed rapidly.

**ANSWER:**   **Third-Party Defendants admit that in early March, 2009, Allied proposed to sell its OOEC stake in Old Orchard and wanted the transaction to close quickly. Third-Party Defendants deny all remaining allegations of paragraph 35.**

36.     On Friday, March 6, Allied confirmed the price at which it would sell its OOEC equity interest in Old Orchard, and that it wanted the transaction to close by the following Friday, March 13.

**ANSWER:**   **Admitted.**

37.     On March 11, 2009, Allied summarized the economic terms of the contemplated transaction and confirmed that the closing date must be on or before March 31, 2009.

**ANSWER:**   **Third-Party Defendants admit that Allied submitted a non-binding term sheet dated March 11, 2009 to Third-Party Plaintiff Mark Saur which had a closing date of March 31, 2009 or sooner.  Third-Party Defendants deny all remaining and/or inconsistent allegations of paragraph 37.**

38.     Allied emphasized that the March 31, 2009 closing was absolutely essential and nonnegotiable. In fact, on March 13 Craig Hille, who was the representative for Allied and Agile, advised "[i]f this deal doesn't happen by 3/31/09, then it is off. This needs to be said in advance because I don't want there to be any hard feelings between you and Allied if the deadline slips and there is no deal."

**ANSWER:**   **Admitted.**

39.     Consistent with Allied's timeline, the parties were able to prepare the documentation needed to complete the transaction during the last week of March 2009. The primary transaction document was entitled Contribution and Redemption Agreement ("2009 Agreement" or "Transaction"). *See* **Exhibit 3.** Pursuant to that Agreement, Old Orchard raised the funds needed to buy Allied's units by issuing new units to the Mark Saur Trust, the Lisa Saur Trust, Veltman, Hillsboro, and Vredevelt. Each of the buyers expended substantial resources to buy these units. Old Orchard then used those funds to redeem all of Allied's OOEC-owned units and to pay off all of the debt it owed Allied and Agile.

**ANSWER:   Third-Party Defendants deny that all of the documentation needed to complete the transaction was prepared during the last week of March, 2009.  Third-Party Defendants admit that the transaction was documented by, among others, a Contribution and Redemption Agreement dated March 31, 2009 (the "Redemption Agreement").  Third-Party Defendants deny as untrue all allegations of paragraph 39 inconsistent with the Redemption Agreement.  Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth of all remaining allegations of paragraph 39.**

     40. Prior to March 31, 2009, Allied knew all of the principal details of the March 31 Transaction, including, but not limited to, the following:

       a. Old Orchard would issue a total of 70.9505 new units to the Lisa Saur Trust, Mark Saur Trust, Hillsboro, Veltman and Vredevelt for $273,273.61 per unit;

       b. Agile was not buying any of the new units and would therefore continue to hold 4.1986 units after the Transaction;

       c. Old Orchard would use part of the proceeds raised from the Transaction to then redeem Allied's 26.3679 OOEC-owned units for $273,273.61 per unit (the remaining new capital was used to pay down debt, including debt owed by Old Orchard to Allied and Agile); and

       d. At the conclusion of the Transaction, the total outstanding Old Orchard units would be 83.3497, compared to 38.7671 outstanding units before the Transaction.

**ANSWER:   Third-Party Defendants deny as untrue the allegations of paragraph 40.  Third-Party Defendants affirmatively state that they were unaware that Old Orchard, with the participation and involvement of the other Defendants/Third-Party Plaintiffs, would breach the provisions of the Third Amended and Restated Operating Agreement of Old Orchard Brands LLC (the "Operating Agreement") by failing or refusing to provide Agile with all of its preemptive purchase rights under the Operating Agreement, as alleged in Agile's Complaint in this action.  Third-Party Defendants further affirmatively state that Old Orchard provided a cash dividend distribution and then a corresponding issuance of shares to other members but not to Agile, thereby further violating Agile's preemptive**

**rights. This action by Old Orchard was not part of or pursuant to the Redemption Agreement and was not disclosed on or before March 31, 2009.**

41.    Consequently, Allied knew prior to March 31 that consummation of the Transaction would result in Agile's percentage of ownership in Old Orchard decreasing to 5.04%, as Agile would then own 4.1986 units of the total 83.3497 units outstanding (compared to 38.7671 units outstanding prior to the Transaction).

**ANSWER:    Denied.**

42.    As Agile's sole agent and manager, as well as an owner of Agile, Allied's knowledge of the Transaction was imputed to and otherwise known by Agile. Further, as Agile's sole manager and agent, Allied had a legal duty to fully inform Agile of all of the material details of the Transaction and the effect that the Transaction would have on Agile's percentage of ownership in Old Orchard.

**ANSWER:    The allegations of paragraph 42 state conclusions of law to which no response is required. To the extent they are intended to allege statements of fact, they are denied, and Third-Party Defendants incorporate their answers to paragraphs 40 and 41.**

43.    As Agile's sole manager and agent, Allied was prohibited from taking any action adverse to Agile's interests without Agile's consent. To do otherwise, would constitute a conflict of interest on the part of Allied.

**ANSWER:    The allegations of paragraph 43 state conclusions of law to which no response is required. To the extent they are intended as allegations of fact, because of the vague, ambiguous, and sweeping nature of the allegations of paragraph 43, Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 43.**

44.    Thus, to the extent that the Transaction is ever deemed adverse to Agile's interests, Allied was obligated to obtain Agile's consent before authorizing and approving the Transaction.

**ANSWER:    The allegations of paragraph 44 state conclusions of law to which no response is required. To the extent they are intended to allege statements of fact, they are denied.**

45.     Leading up to March 31, 2009, and with full knowledge of the effect the Transaction would have on Agile, Allied continued to represent Agile with respect to the Transaction and was Agile's sole manager.

**ANSWER:   Third-Party Defendants deny the allegations of paragraph 45 and affirmatively state that in reference to the March, 2009 redemption transaction, one or more of the Third-Party Plaintiffs inquired whether Allied was representing Agile's ownership interest in Old Orchard; they were expressly told Allied was not and that they would have to deal directly with Agile through Agile's majority owner, Goldman Sachs; and they in fact did so.**

46.     In particular, Allied communicated to Old Orchard, in writing, the payoff amounts due with respect to the loans owed by Old Orchard to Allied and Agile. In the payoff letter from Allied, it made no distinction between monies owed by Old Orchard directly to Allied versus monies owed to Agile. Instead, the payoff amounts were lumped together and described by Allied as amounts due "to Allied." Allied's payoff instructions also directed that the monies to payoff both Allied and Agile's loans should be wired to Allied's bank account.

**ANSWER:   Third-Party Defendants admit the specific factual allegations of paragraph 46 but deny the inferred allegations that "Allied continued to represent Agile with respect to the Allied redemption and was Agile's sole manager," and incorporate their answer to paragraph 45.  The Third-Party Plaintiffs knew that Agile was not participating in the March, 2009 redemption transaction, and one or more Third-Party Plaintiffs dealt directly with Agile, without any involvement of Allied.  The Third-Party Plaintiffs knew, or should have known, that Allied had not released or waived Agile's preemptive rights under the Operating Agreement, and that Old Orchard was obligated to fully comply with all those provisions.**

47.     Allied never stated that its fund, Agile, was interested in exercising any claimed preemptive rights. Moreover, during Allied's short closing schedule, Allied never advised Old Orchard, or any of the other Defendants, that Agile (which was managed and owned by Allied) required any notices related to the transaction.

**ANSWER:   Third-Party Defendants deny the allegations of paragraph 47 that Agile was "its [Allied's] fund" and that Agile was "owned by Allied" and incorporate their answers to paragraphs 26 and 46.  Third-Party Defendants admit the remaining allegations of paragraph 47 and affirmatively state that in regard to the Allied redemption transaction, one or more of the Third-Party Plaintiffs knew that Allied was not speaking for or**

13

representing Agile and knew that Old Orchard was obligated to fully comply with Agile's preemptive rights under the Operating Agreement.

48.     Saur and Veltman also had communications with a representative of Goldman Sachs, an investor in Agile. Goldman's representative stated that Goldman was interested in buying a majority equity stake in Old Orchard either before or after the Transaction. Even during these conversations, Allied remained Agile's sole manager.

**ANSWER:   Third-Party Defendants admit that allegations of the first sentence of paragraph 48 and affirmatively state that the Third-Party Plaintiffs knew that Goldman Sachs, Agile's majority investor, not Allied, was representing Agile's remaining ownership interests in Old Orchard, including its preemptive rights under the Operating Agreement. Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth of the second sentence of paragraph 48 and deny all remaining and/or inconsistent allegations of paragraph 48.**

49.     To protect Defendants from lawsuits of the very type Agile has brought, Third- Party Plaintiffs required that Allied and OOEC make certain warranties and representations. Those warranties and representations are set forth in Article III of the 2009 Agreement.

**ANSWER:   Third-Party Defendants admit that there are warranties and representations in the 2009 Agreement, which speak for themselves.  Third-Party Defendants deny all remaining allegations of paragraph 49.**

50.     At Section 3.2, OOEC and Allied expressly warranted that they had full authority to consummate the transaction:

> The execution, delivery and performance of this Agreement by Seller and Allied has been duly authorized by all necessary actions and proceedings, and Seller and Allied each has all requisite power and authority to execute and deliver this Agreement and to consummate the transactions contemplated by this Agreement.

**ANSWER:   The provisions of Section 3.2 speak for themselves, and the Third-Party Defendants deny the allegations of paragraph 50 to the extent they are inconsistent with those provisions.**

14

51.     OOEC and Allied also warranted that neither the execution and delivery of the Transaction documents, nor the consummation of the Transaction itself, would result in any violation or breach of any of the organizational documents:

> The execution and delivery of this Agreement by Seller [OOEC] and Allied does not, and the consummation of the transactions contemplated by this Agreement by Seller and Allied will not (i) <u>conflict with, or result in any violation or breach of, or require any consent under</u>, any provision of any of the Organizational Documents of the Company or the Seller; (ii) conflict with, or result in any violation or breach of, constitute ... a default or require a consent or waiver under, any Contract to which Seller is a party.... Section 3.4 (emphasis added).

**<u>ANSWER:</u>   Denied.  The provisions of Section 3.4 speak for themselves.**

52.     As defined elsewhere in the 2009 Agreement, the phrase "Organizational Documents" expressly includes the Operating Agreement.

**<u>ANSWER:</u>   Admitted.**

53.     In Section 3.4, Allied and OOEC also warranted that their execution of the Agreement did not "require a consent or waiver under" the Operating Agreement.

**<u>ANSWER:</u>   The provisions of Section 3.4 speak for themselves, and the Third-Party Defendants deny the allegations of paragraph 53 to the extent they are inconsistent with those provisions.**

54.     Allied and OOEC were required to make these warranties and representations to protect Third-Party Plaintiffs from any claim by another party that the 2009 Agreement violated its rights.

**<u>ANSWER:</u>   Denied.**

55.     Allied and OOEC's warranty in Section 3.4 covered the claims now asserted by Agile. In fact, Agile was the only current member under the Operating Agreement that was not signing the 2009 Agreement in its own name. Thus, Agile was the only possible

party who could even claim that the 2009 Agreement breached its rights under the Operating Agreement. Any contrary interpretation would render Section 3.4 meaningless.

**ANSWER:**   **Denied.**

56.   At Section 6.7 of the 2009 Agreement, Allied also guaranteed "all obligations and liabilities of [OOEC] ..." under the Agreement. This guarantee from Allied was important to Third-Party Plaintiffs because OOEC was simply an investment vehicle owned by Allied, who was the real party in interest with respect to the transaction.

**ANSWER:**   **The provisions of Section 6.7 speak for themselves, and the Third-Party Defendants deny the allegations of paragraph 56 to the extent they are inconsistent with those provisions.   Third-Party Defendants incorporate their answer to paragraph 18. Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 56.**

57.   In order to close the March 31, 2009 Transaction, Allied's designated representatives on Old Orchard's Board of Managers approved the following resolutions:

> FURTHER RESOLVED, that the Board of Managers hereby approves and authorizes: (1) the execution of the Agreement and Transaction Documents by any officer of the Company, with such modifications and amendments as such officer deems appropriate, and (2) the consummation of all matters contemplated by the Agreement and the Transaction Documents (collectively, the "Transactions");

> FURTHER RESOLVED, that the Board of Managers, on behalf of the Company, consents to the Transactions and expressly waives any and all options, notices, restrictions or other provisions, whether under the Company's Operating Agreement or otherwise that might prohibit, limit, or otherwise restrict or impair the Transactions, to the extent necessary to give such Transactions full legal effect; and

> FURTHER RESOLVED, that all actions taken by Mark Saur, Howard Veltman, other Company officers, or agents of the Company on behalf of the Company in connection with the Transactions and the negotiations of the Agreement, the Transaction Documents, and any related documents are hereby ratified and approved.

*See* **Exhibit** 4 (emphasis added).

**ANSWER:**   The provisions of the Old Orchard Brands LLC Written Consent Resolutions of the Board of Managers speak for themselves.   The paragraphs quoted in paragraph 57 are only a portion of those provisions.   Third-Party Defendants deny the allegations of paragraph 57 to the extent they are inconsistent with the entirety of the Resolutions.

58.   Allied controlled the Old Orchard Board of Managers and the above resolutions were unanimously approved by Allied's designees on the Board.

**ANSWER:**   Third-Party Defendants admit that the Written Consent Resolutions were unanimously approved by the entire Old Orchard Board.   Third-Party Defendants deny the remaining allegations of paragraph 58.

59.   According to Agile's Complaint, Allied's authorization of the March 31 Transaction was solely for its own benefit and not Agile's.

**ANSWER:**   Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 59.

60.   In reliance on the warranties and representations made by Allied and OOEC, Third-Party Plaintiffs closed on the 2009 Agreement on March 31, 2009. Allied received $7,205,651.16 for its OOEC-owned equity interest in Old Orchard and $4,965,181.04 as a cash distribution. Allied also received $22,391,897.07 to retire Old Orchard's subordinated debt, of which approximately $1.4 million was actually owed to Agile.

**ANSWER:**   Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of paragraph 60 but affirmatively state the representations and warranties were limited to the redemption of the Allied interests, and that if Third-Party Plaintiffs allege they relied on those warranties and representations to excuse Old Orchard's failure to comply with the preemptive rights of Agile under the Operating Agreement, any such reliance was both unreasonable and contrary to their actual knowledge.   Third-Party Defendants admit that at closing Old Orchard's subordinated debt to Allied and Agile was paid and that Allied received payment of an amount based on the Estimated Enterprise Value as defined in and pursuant to the Redemption Agreement.   Third-Party Defendants deny all remaining and/or inconsistent allegations of paragraph 60.

61.   As part of the March 31 Transaction, Agile received a cash distribution from Old Orchard of $790,613.17.

**ANSWER:   Denied.  The cash distribution to Agile and other Old Orchard members was not part of or pursuant to the Redemption Agreement but was implemented by Old Orchard and the other Third-Party Plaintiffs subsequent to closing as part of a plan by them to  further deprive Agile of its preemptive rights.**

62.    The March 31, 2009 transaction had no impact on the number of units owned by Agile and it continued as a member of Old Orchard. Even though Allied had sold its OOEC owned interest in Old Orchard, it continued to communicate with Old Orchard on behalf of Agile.

**ANSWER:   Third-Party Defendants admit that the redemption of Allied's ownership interests in Old Orchard did not impact the number of units owned by Agile, that Agile continued as a member of Old Orchard, and that Allied continued to communicate with Old Orchard on behalf of Agile.  Third-Party Defendants affirmatively state that Old Orchard was obligated to give Agile notice of its preemptive rights under the Operating Agreement, so that Agile could have increased its number of units, but Old Orchard failed to do so.  As a result, Agile's percentage ownership declined.  Old Orchard further diminished Agile's percentage of ownership by subsequently providing a cash dividend distribution to all remaining members and then a corresponding issuance of shares to those members except Agile in further violation of Agile's preemptive rights.  Third-Party Defendants incorporate their answer to paragraph 61.**

63.    By way of example, on April 3, 2009 (only three days after the transaction closed), Allied requested financial information from Old Orchard on behalf of Agile, including the 2009 budget and ownership and capitalization table.

**ANSWER:   Third-Party Defendants deny the allegation of paragraph 63, but admit that following the March 31, 2009 closing, Allied requested certain financial information from Old Orchard.**

64.    On April 6, 2009, Old Orchard sent Allied the new debt and equity capitalization table, reflecting the closing of the March 31 Transaction. Allied did not question the accuracy of the equity capitalization table or Agile's percentage of ownership. Allied's silence at that time was not surprising as it negotiated the terms of the transaction and otherwise knew all of the details of the transaction that it sought and ultimately approved.

**ANSWER:   Third-Party Defendants admit that on April 6, 2009 Old Orchard emailed Allied a revised debt and equity capitalization table, and deny the remaining allegations of paragraph 64.**

65.     Also on April 6, Old Orchard sent Allied documentation that again showed that the funds used to pay off Old Orchard's debt to Agile were to be wired (and in fact, were wired) to an Allied bank account, as Allied requested.

**ANSWER:    Admitted.**

66.     On April 30, 2009, Allied again confirmed that it managed Agile and was Agile's agent and representative by stating it had "a question related to our managing of the Agile investment."

**ANSWER:    Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66.**

67.     On June 1, 2009, Allied again reiterated this position, explaining "[w]e continue to do quarterly reports on Old Orchard with respect to the Agile investment. Would you please send us the current financial statements and a report showing the current ownership of the business?"

**ANSWER:    Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67.**

68.     Allied also provided bank account and wiring instructions to Old Orchard for Agile with respect to a June 2009 distribution to Old Orchard members.

**ANSWER:    Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 68.**

69.     Months after the March 31 Transaction closed, Allied took the position that Agile had a right to purchase some of the new units issued by Old Orchard as part of the March 31 Transaction. *See* Exhibit 5. According to Allied, the March 31 Transaction (which it was a party to) was a "violation of AGILE'S preemptive rights and has wrongfully diluted AGILE'S equity interest....*"Id.*

**ANSWER:    Third-Party Defendants deny the allegations of paragraph 69 as plead and affirmatively state that the correspondence quoted and attached, which speaks for itself, was from Agile, by Agile's Manager, Allied.**

70.     Allied's correspondence, claiming that Agile's rights had been violated by the Transaction that Allied negotiated and approved, was written by Allied on its own letterhead, and expressly stated that Allied is the "Manager" of Agile.

**ANSWER:   Third-Party Defendants deny the allegations of paragraph 70 as plead and affirmatively state that the attached correspondence, which speaks for itself, was from Agile, by Agile's Manager, Allied.**

71.     Allied's correspondence was remarkable given that it had been Agile's manager and agent, and had actually represented Agile with respect to Old Orchard, since January 2008. Leading up to, during and after the closing of the March 31 Transaction, Allied had never given any indication that Agile wanted to buy new units as part of the March 31 Transaction, or that it otherwise objected to the March 31 Transaction.

**ANSWER:   Third-Party Defendants admit that Allied was Agile's manager but affirmatively state that in regard to the March 31, 2009 redemption transaction, one or more of the Defendants/Third-Party Plaintiffs dealt directly with Agile's majority owner in regard to Agile's ownership interests in Old Orchard; and Allied did not waive Agile's rights under the Old Orchard Operating Agreement or in any way consent to Old Orchard's failure to honor those rights.   Third-Party Defendants deny all remaining and/or inconsistent allegations of paragraph 71.**

72.     On October 16, 2009, Agile filed this lawsuit against Defendants alleging, among other things, that the consummation of the March 31 Transaction violated its rights under the Operating Agreement.

**ANSWER:   Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 72, but admit that Agile filed the present lawsuit, the allegations of which speak for themselves.**

73.     Agile's Complaint will be determined to be meritless for numerous reasons, including, but not limited to, the following. First, Allied was Agile's manager and agent for all purposes, and Allied had been Agile's representative to Old Orchard since Agile became a member of Old Orchard. At the same time, Allied was in complete control of Old Orchard by virtue of its appointment of a majority of managers on Old Orchard's Board of Managers. Allied

was the proponent of the March 31, 2009 Transaction and knew every detail of the Transaction.

Thus, Agile also knew every detail of the Transaction, but chose not to buy new units or

otherwise object to the Transaction. In fact, Old Orchard's Board of Managers (again, controlled

by Agile's manager, Allied) voted unanimously to approve the March 31 Transaction. Second,

Allied, Agile's agent, set and enforced the expedited closing date of March 31, 2009 and by

doing so, Allied and Agile waived the 20-day "Notice Period" Agile claims in its Complaint that

it was entitled to. Third, Agile had more than 20 days after the March 31 Transaction closed to

come forward and request to buy additional Old Orchard units and it chose not to. Finally, Old

Orchard's units were primarily sold to employees of Old Orchard, and therefore, under Section

17.4(d) of the Operating Agreement, Agile had no preemptive rights.

**ANSWER:   The allegations of paragraph 73 state a legal conclusion or subjective prediction to which no response is required.  To the extent they are intended as statements of fact, Third-Party Defendants deny the allegations of paragraph 73 and incorporate their answers to paragraphs 1 - 72.**

74.     Notwithstanding that Third-Party Plaintiffs should not be held liable to

Agile, if any of them are held liable, then Allied is liable to Third-Party Plaintiffs and must

indemnify them as set forth herein.

**ANSWER:   Denied.**

**COUNT I**

75.     Third-Party Plaintiffs reallege and incorporate by reference the preceding

paragraphs as though fully set forth herein.

**ANSWER:   Third-Party Defendants incorporate by reference their answers to paragraphs 1 – 74 above.**

76.     Third-Party Plaintiffs, Allied and OOEC executed the 2009 Agreement, in

which Allied and OOEC represented and warranted:

> The execution, delivery and performance of this Agreement by
> Seller and Allied has been duly authorized by all necessary actions

21

and proceedings, and Seller and Allied each has all requisite power and authority to execute and deliver this Agreement and to consummate the transactions contemplated by this Agreement.

The execution and delivery of this Agreement by Seller and Allied does not, and the consummation of the transactions contemplated by this Agreement by Seller and Allied will not (i) conflict with, or result in any violation or breach of, or require any consent under, any provision of any of the Organizational Documents of the Company or the Seller; (ii) conflict with, or result in any violation or breach of, constitute ... a default or require a consent or waiver under, any Contract to which Seller is a party....

Sections 3.2 and 3.4 of the 2009 Agreement, respectively.

**ANSWER:** **The provisions of the entire 2009 Agreement speak for themselves. Third-Party Defendants deny the allegations of paragraph 76 to the extent they are inconsistent with the provisions of that Agreement.**

77. Third-Party Plaintiffs relied upon these warranties and representations when they executed the 2009 Agreement.

**ANSWER:** **Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 77, but affirmatively state the warranties and representations were limited to the redemption of the Allied interests, and that if Third-Party Plaintiffs allege they relied on those warranties and representations to excuse Old Orchard's failure to comply with the preemptive rights of Agile under the Operating Agreement, any such reliance was both unreasonable and contrary to their actual knowledge.**

78. Article VI of the 2009 Agreement requires OOEC to indemnify the Third-Party Plaintiffs and hold them harmless from losses, damages, liabilities, and reasonable costs and reasonable expenses (including, without limitation, reasonable attorneys' fees) incurred by them, to the extent caused by any breach of or inaccuracy in any representation or warranty made by OOEC.

**ANSWER:** **The provisions of the entire 2009 Agreement speak for themselves. Third-Party Defendants deny the allegations of paragraph 76 to the extent they are inconsistent with the provisions of that Agreement.**

79.    At Section 6.7 of the 2009 Agreement, Allied guaranteed "all obligations and liabilities of ... [OOEC] under ... [the 2009] Agreement ... including ... [OOEC's] indemnification obligations."

**ANSWER:**   **The provisions of the entire 2009 Agreement speak for themselves.  Third-Party Defendants deny the allegations of paragraph 76 to the extent they are inconsistent with the provisions of that Agreement.**

80.    Allied's principal, Agile, which Allied represented throughout the negotiation and consummation of the March 31 Transaction, has now filed this lawsuit against Third-Party Plaintiffs alleging that the consummation of the 2009 Agreement was a violation of its claimed preemptive rights under the Operating Agreement.

**ANSWER:**   **Third-Party Defendants admit that Agile has filed this lawsuit in which it makes certain claims.  Agile's Complaint speaks for itself.  Third-Party Defendants deny the remaining allegations of paragraph 80.**

81.    Third-Party Plaintiffs deny that any breach of the Operating Agreement occurred as a result of the Transaction, but in the event that the Court finds such a breach did occur, Agile's agent and representative, Allied, and OOEC would be in a material breach of Sections 3.2 and 3.4 of the 2009 Agreement.

**ANSWER:**   **Denied.**

82.    Allied's breaches of Article VI are more specifically described as follows. First, in Section 3.4 of the Agreement, Allied warranted that "consummation of the transactions contemplated by this Agreement by Seller and Allied will not... result in any violation or breach of [the Operating Agreement]." Absent either Allied's execution of the Agreement or consummation of the Transaction as contemplated, Agile could not claim any injury arising from the Transaction. Put differently, Agile is complaining about the Transaction that Allied contemplated, executed and consummated.

**ANSWER:**   **Denied.**

83.    Second, Allied warranted that "consummation of the transactions contemplated by this Agreement by Seller and Allied will not ... require any consent or waiver under [the Operating Agreement]." Similarly, Allied also warranted that the "execution, delivery and performance of this Agreement by Seller and Allied has been duly authorized by all necessary actions and proceedings, and Seller and Allied each has all requisite power and authority to execute and deliver this Agreement and to consummate the transactions contemplated by this Agreement."

**ANSWER:    The provisions of the entire 2009 Agreement speak for themselves.  Third-Party Defendants deny the allegations of paragraph 76 to the extent they are inconsistent with the provisions of that Agreement, and they deny any allegation that those provisions were breached.**

84.    As Agile's sole manager and agent, Allied was prohibited from taking any action adverse to Agile without Agile's consent.

**ANSWER:    The allegations of paragraph 84 are conclusions of law to which no response is required.  To the extent they are intended as allegations of fact, because of the vague, ambiguous, and sweeping nature of the allegations of paragraph 84, Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 84.**

85.    Agile has now alleged that the 2009 Transaction was adverse to it and has filed suit, ostensibly claiming that it did not consent to the Transaction. If Agile's allegations are true, and it never consented to or authorized the Transaction, then Allied's representation and warranty that it had full authority to execute the Agreement and needed no consent or waiver to execute the Transaction was breached.

**ANSWER:    Third-Party Defendants admit that Agile has filed suit and that its Complaint speaks for itself.  Third-Party Defendants deny the remaining allegations of paragraph 85.**

86.    On December 9, 2009, Third-Party Plaintiffs gave written notice to Allied and OOEC of their indemnity obligations in accordance with Article VI of the 2009 Agreement. *See* **Exhibit 6**.

24

**ANSWER:**    **Admitted.**

87.    Allied and OOEC responded claiming that they are not liable to Third-Party Plaintiffs in the event Third-Party Plaintiffs are found liable to Agile.

**ANSWER:**    **Admitted.**

88.    There is an actual case and controversy between Third-Party Plaintiffs and Allied and OOEC regarding whether Allied and OOEC are obligated to indemnify Third-Party Plaintiffs in the event that they are ever found liable to Agile in this case. Pursuant to 28 USC § 2201 and Fed. R. Civ. P. 57, this Court has the power and authority to adjudicate the rights and obligations of the Third-Party Plaintiffs and Third-Party Defendants with respect to this issue.

**ANSWER:**    **The allegations of paragraph 88 are conclusions of law to which no response is required.  To the extent a response is required, Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 88.**

89.    Consequently, Third-Party Plaintiffs request that this Court enter judgment, declaring that in the event any of the Third-Party Plaintiffs are found to be in breach of the Operating Agreement, or otherwise suffer any damage or loss as a result of the action filed by Agile, Allied and OOEC are liable to Third-Party Plaintiffs for all of the Third-Party Plaintiffs' damages and losses, including costs and attorneys' fees.

**ANSWER:**    **Third-Party Defendants deny that they are liable or that Third-Party Plaintiffs are entitled to any such relief.**

## COUNT II

90.    Third-Party Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

**ANSWER:**    **Third-Party Defendants incorporate by reference their answers to paragraphs 1 – 89 above.**

91.    As set forth above, Article VI of the 2009 Agreement requires OOEC to indemnify the Third-Party Plaintiffs and hold them harmless from losses, damages, liabilities,

and reasonable costs and reasonable expenses (including, without limitation, reasonable attorneys' fees) incurred by them, to the extent caused by any breach of or inaccuracy in any representation or warranty made by OOEC.

**ANSWER:** **The provisions of the entire 2009 Agreement speak for themselves. Third-Party Defendants deny the allegations of paragraph 91 to the extent they are inconsistent with the provisions of that Agreement.**

92. At Section 6.7 of the 2009 Agreement, Allied guaranteed "all obligations and liabilities of ... [OOEC] under ... [the 2009] Agreement ... including ... [OOEC's] indemnification obligations."

**ANSWER:** **The provisions of the entire 2009 Agreement speak for themselves. Third-Party Defendants deny the allegations of paragraph 92 to the extent they are inconsistent with the provisions of that Agreement.**

93. In the event Agile prevails against any of the Third-Party Plaintiffs relating to a breach of the Operating Agreement, then Allied and OOEC are liable to Third-Party Plaintiffs for all losses incurred, including costs and attorneys' fees.

**ANSWER:** **Denied.**

WHEREFORE, Third-Party Defendants request that all relief requested by Third-Party Plaintiffs be denied; that the First Amended Third-Party Complaint be dismissed; that judgment be entered in favor of Third-Party Defendants and against Third-Party Plaintiffs; and that Third-Party Defendants be awarded their costs in defending this action, including reasonable attorneys' fees.

## **AFFIRMATIVE AND OTHER DEFENSES**

1. The First Amended Third-Party Complaint fails to state a claim upon which relief may be granted for breach of warranty, breach of representations, or breach of contract.

2.     The First Amended Third-Party Complaint fails to state a claim upon which relief may be granted for indemnity.

3.     There was no beach of the warranties, representations, and/or promises set forth in the March 31, 2009 Redemption Agreement by Allied or OOEC, and therefore the indemnity provision of the Redemption Agreement is inapplicable.

4.     Neither Allied nor OOEC made any warranty, representations, or promise regarding the actions or failure to act of any other entity or individual, including Old Orchard.

5.     Old Orchard, not Allied or OOEC, is liable to Agile:

(a)     Compliance with Agile's preemptive rights under the Old Orchard Operating Agreement was the sole obligation of Old Orchard;

(b)     Old Orchard breached its obligations to Agile under the preemptive rights provisions of the Old Orchard Operating Agreement;

(c)     Old Orchard failed to provide Agile the required contractual notice under the preemptive rights provisions of the Operating Agreement;

(d)     No notice, actual or constructive, sufficient to advise Agile that its preemptive rights as set forth in the Operating Agreement were being triggered, was given by Old Orchard to Agile, either directly or through Allied or OOEC;

(e)     Old Orchard is solely responsible for the loss claimed by Agile. Any liability of Old Orchard to Agile under the Complaint in this action was proximately caused solely from the actions, failures to act, errors, and/or omissions of Old Orchard and/or the Third-Party Plaintiffs;

(f)     No action or omission of either Allied or OOEC was a proximate cause of that loss; and

(g)     Allied and OOEC did nothing to prevent, hinder, or excuse Old Orchard from complying with Agile's preemptive rights under the Old Orchard Operating Agreement.  Neither Allied's and OOEC's execution and delivery of the Redemption Agreement nor their consummation of the redemption transaction prevented or hindered Old Orchard from complying with Agile's preemptive rights under the Old Orchard Operating Agreement.

6.     Any alleged reliance by the Third-Party Plaintiffs on any warranty or representation given by Allied and/or OOEC in the Redemption Agreement to excuse Old Orchard's failure or refusal to comply with the preemptive rights of Agile under the Old Orchard Operating Agreement is unreasonable.

7.     Old Orchard and other Third-Party Plaintiffs, many or all of whom were sophisticated business persons, and two of whom were Old Orchard's CEO and CFO, knew that there had been no compliance with, or waiver of, Agile's preemptive rights, and they are therefore legally barred from claiming that Third-Party Defendants breached any warranty or representation that Agile had no preemptive rights in regard to the redemption transaction.

8.     Allied and OOEC never released or waived, or consented to the release or waiver, of Agile's preemptive rights under the Old Orchard Operating Agreement.

9.     In reference to the March, 2009 redemption transaction, one or more Third-Party Plaintiffs inquired whether Allied was representing Agile's ownership interest in Old Orchard and they were expressly told Allied was not.

10.     In reference to the March, 2009 redemption transaction, one or more Third-Party Plaintiffs dealt directly with Agile's majority owner regarding Agile's ownership interest in Old Orchard, and Third-Party Plaintiffs knew that Allied was not acting on behalf of Agile with regard to the issuance of additional units to Agile.

11.     In reference to the March, 2009 redemption transaction, one or more representatives of Old Orchard and the other Third-Party Plaintiffs dealt directly with Agile's majority owner regarding Agile's ownership interest in Old Orchard, and Allied believed that Old Orchard would comply with Agile's preemptive rights, but Old Orchard failed to do so.

12.     Old Orchard did not provide Agile with constructive notice of Agile's rights under the preemptive rights provision of the Old Orchard Operating Agreement.

(a)     Old Orchard knew, or should have known, that it should provide notice directly to Agile through Agile's majority owner, not through Allied;

(b)     The Old Orchard Operating Agreement requires the notice to be in writing, and further requires any waiver of that requirement to be in writing, and Old Orchard provided no such written notice or waiver; and

(c)     The Old Orchard Operating Agreement requires the notice to contain certain information, including but not limited to the purchase price, and that information was not provided by Old Orchard at the time of closing.

13.     Old Orchard further violated Agile's preemptive rights by providing a cash dividend distribution to its remaining members and a corresponding issuance of units to all of those members except Agile.  This action was taken with the interest of benefitting those other members and to reduce Agile's percentage ownership.  This action by Old Orchard was not part of or pursuant to the Redemption Agreement of March 31, 2009, occurred thereafter, and Allied was not informed of this action at or before the closing.

14.     To the extent that the Third-Party Plaintiffs successfully assert that the distribution of new ownership units to them occurred simultaneously with the redemption of Allied's units, not subsequently, so that Agile's preemptive rights under the Old Orchard

Operating Agreement were triggered then, then Old Orchard breached its warranty under Section 4.3 of the Redemption Agreement.  As a result:

      (a)   Old Orchard and the other Third-Party Plaintiffs cannot assert a claim of breach by the Third-Party Defendants; and

      (b)   Old Orchard and the other Third-Party Plaintiffs must indemnify Third-Party Defendants under Article VI of the Redemption Agreement for all resulting damages, loss and expense, including the cost of defending this action, including reasonable attorneys' fees.

      15.   Neither Allied nor OOEC breached any contractual or fiduciary duties owed to Agile.

      16.   Third-Party Plaintiffs lack standing to claim a breach by Allied and/or OOEC of any fiduciary or contractual duties alleged to be owed to Agile.

      WHEREFORE, Third-Party Defendants request that all relief requested by Third-Party Plaintiffs be denied; that the First Amended Third-Party Complaint be dismissed; that judgment be entered in favor of Third-Party Defendants and against Third-Party Plaintiffs; and that Third-Party Defendants be awarded their costs in defending this action, including reasonable attorneys' fees.

      MILLER JOHNSON
      Attorneys for Third-Party Defendants/Counter-Plaintiffs

Dated:  August 12, 2011      By   /s/ Jon G. March            
           Jon G. March (P17065)
           David J. Gass (P34582)
           Joseph J. Gavin (P69529)
      Business Address:
           250 Monroe Avenue, N.W., Suite 800
           PO Box 306
           Grand Rapids, Michigan  49501-0306
      Telephone:  (616) 831-1700

## COUNTERCLAIM OF THIRD-PARTY DEFENDANTS
## AGAINST THIRD-PARTY PLAINTIFFS

Third-Party Defendants and Counter-Plaintiffs, Allied Capital Corporation and Old Orchard Equity Corp., by their counsel, Miller Johnson, for their Counterclaim against Third-Party Plaintiffs and Counter-Defendants Old Orchard Brands LLC, Apple Valley Holdings, Inc., Howard Veltman, Mark R. Saur, individually and as trustee of the Mark R. Saur Trust, Lisa M. Saur, individually and as trustee of the Lisa M. Saur Trust, Hillsboro Associates, LLC, and Charlene Vredevelt, state as follows:

1.     Allied Capital Corporation ("Allied") was at all relevant times a Maryland corporation with its principal place of business in Washington, D.C., and it was merged into Ares Capital Corporation, also a Maryland corporation, on or about April 1, 2010.

2.     Old Orchard Equity Corporation ("OOEC") is a Delaware corporation with its principal place of business in Washington, D.C.

3.     Old Orchard Brands, LLC ("Old Orchard") is a Michigan limited liability company with its principal place of business in Michigan.

4.     On information and belief, Third-Party Plaintiff and Counter-Defendant, Apple Valley Holdings, Inc. ("AVH"), is a Michigan corporation with its principal place of business in Kent County, Michigan.  AVH is a member of Old Orchard.

5.     On information and belief, Third-Party Plaintiff and Counter-Defendant, Mark R. Saur, is an individual domiciled in the State of Michigan and is the Trustee of the Mark R. Saur Trust ("Mark Saur Trust").  The Mark Saur Trust is a member of Old Orchard.

6.     On information and belief, Third-Party Plaintiff and Counter-Defendant, Lisa M. Saur, is an individual domiciled in the State of Michigan and is the Trustee of the Lisa M. Saur Trust ("Lisa Saur Trust").  The Lisa Saur Trust is a member of Old Orchard.

7.      On information and belief, Third-Party Plaintiff and Counter-Defendant, Howard Veltman ("Veltman"), is an individual domiciled in the State of Michigan.  Veltman is a member of Old Orchard.

8.      On information and belief, Third Party Plaintiff and Counter Defendant, Charlene Vredevelt ("Vredevelt"), is an individual domiciled in the State of Michigan. Vredevelt is a member of Old Orchard.

9.      On information and belief, Third Party Plaintiff and Counter Defendant, Hillsboro Associates, LLC ("Hillsboro"), is a Michigan limited liability company.  Hillsboro's members are Howard Veltman, Arthur S. Veltman, as Trustee of the Arthur S. Veltman Trust UAD August 11, 1986, as amended, Donna M. Veltman, as Trustee of the Donna M. Veltman Trust UAD August 11, 1986, as amended, Warren A. Veltman and Elizabeth A. Veltman. Arthur S. Veltman, Donna M. Veltman, Warren A. Veltman, and Elizabeth A. Veltman are individuals domiciled in the State of Michigan.  Hillsboro is a member of Old Orchard.

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C.  § 1332 because, on information and belief, there is complete diversity of citizenship between Counter-Plaintiffs and Counter-Defendants and the amount in controversy exceeds $75,000, exclusive of costs and interest.

11.     Counter-Defendants have submitted to the personal jurisdiction of this Court, and venue in this Court is proper.

<u>COUNT I</u>

12.     In 2007, Allied, acting through OOEC, purchased a majority interest of the ownership units ("Units") in Old Orchard.

13.     In 2008, OOEC sold some of its Units in Old Orchard to Agile Fund I, LLC ("Agile").

14.     As a result of these two transactions, both OOEC and Agile were members of Old Orchard.

15.     Old Orchard and its members were parties to the Third Amended and Restated Operating Agreement of Old Orchard Brands, LLC ("Operating Agreement").  A copy of the Operating Agreement is on file as an attachment to other pleadings in this lawsuit.

16.     Article XVII of the Operating Agreement, entitled Preemptive and Similar Rights, contains specific preemptive rights provisions for the benefit of all its members, including Agile.  The Operating Agreement provides each member the preemptive right to purchase a sufficient number of any new Units issued in order for that member to maintain his/her/its percentage membership interest.  The Operating Agreement sets forth specific procedures that must be followed in order to effect proper notice to each member that new Units will issue, and the Operating Agreement defines what is sufficient notice.

17.     Old Orchard has responsibility for complying with the preemptive provisions of the Operating Agreement.

18.     On March 31, 2009, Allied, OOEC, Old Orchard, and the other Third-Party Plaintiffs/Counter-Defendants entered a Contribution and Redemption Agreement (the "Redemption Agreement") by which OOEC sold its Units to Old Orchard.  A copy of the Redemption Agreement is on file as an attachment to other pleadings in this lawsuit.

19.     Agile did not sell its Units in Old Orchard.

20.     As part of and pursuant to the Redemption Agreement, the Third-Party Plaintiffs/Counter-Defendants issued to themselves new Units, but in doing so they failed to comply with Agile's preemptive rights under the Operating Agreement.

21.     In addition, separate and apart from the provisions of the Redemption Agreement, and subsequent to its execution, Old Orchard and the other Third-Party

Plaintiffs/Counter-Defendants caused Old Orchard to issue a cash dividend distribution to its remaining members and a corresponding issuance of Units to all of those members except Agile, again violating Agile's preemptive rights under the Operating Agreement.

22.     On October 16, 2009, Agile sued Old Orchard and the other Third-Party Plaintiffs/Counter-Defendants, alleging, among other claims, a breach of the Operating Agreement.

23.     On March 23, 2010, Third-Party Plaintiffs filed their First Amended Third-Party Complaint against Allied and OOEC, alleging that if they are found liable to Agile, which they deny will occur, then Allied and OOEC would be liable to them for breach of certain warranties and representations found in Article III of the Redemption Agreement and for indemnity under Article VI of the Redemption Agreement.  Allied and OOEC have denied any liability and have raised numerous defenses.

24.     Article IV of the Redemption Agreement is entitled "Representations and Warranties of Buyer and the Company."  Section 4.3 is entitled "No Breach" and it applies to Old Orchard and to the other Third-Party Plaintiffs/Counter-Defendants.  Section 4.3 provides:

> 4.3   <u>No Breach</u>.
>
> (a)     Except as specified in **Schedule 4.3**, neither the execution and delivery of this Agreement by the Buyers and the Company nor the consummation of the transactions contemplated hereby by the Buyer and the Company will (i) conflict with, or result in any violation or beach of, any provision of the articles of organization, articles of incorporation, bylaws or operating agreement, as applicable, of such Buyer; (ii) conflict with, or result in any violation or breach of, any provision of any of the Organization Documents; (iii) conflict with, or result in any violation or breach of, constitute (with or without notice or lapse of time, or both) a default (or give rise to a right of termination, cancellation or acceleration of any obligation or loss of any benefit) under or termination of (or otherwise give any other contracting party the right to terminate), or require a consent or waiver under, any Contract to which the Company is a party, unless such violation, breach, default or termination, or the failure

to obtain such consent or waiver, would not be reasonably likely to result in a material liability of or cause a material loss of rights or benefits of the Seller; (iv) conflict with, or result in any violation or breach of, constitute (with or without notice or lapse of time, or both) a default or require a consent or waiver under, any Contract to which any Buyer is a party; or (v) violate any Law applicable to any Buyer, the Company or any of their respective properties or assets.

(b)     Except for filings identified in Schedule 4.3, no filing, registration, declaration, or notice with, consent, approval, license, permit, order, authorization or waiver of, or other action by, any third party, including any Governmental Authority, is necessary in connection with any Buyer's or the Company's execution of this Agreement or the Company's or any Buyer's consummation of the transactions contemplated by this Agreement unless the failure to obtain such would not be reasonably likely to result in a liability of or cause a loss of rights or benefits of the Seller.

25.     Section 4.2 of the Redemption Agreement is entitled Authorization; Enforceable Agreement.  Section 4.2(b) provides as follows:

4.2(b)  The execution, delivery and performance of this Agreement by the Company has been duly authorized by all necessary actions and proceedings, and the Company has full power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby.  This Agreement constitutes the valid and binding obligation of the Company, and is enforceable against the Company in accordance with its terms.

26.     The Third-Party Plaintiffs/Counter-Defendants claim that simultaneously with, and as an integral part of, the redemption of the Allied ownership Units, new Units were issued to the Third-Party Plaintiffs/Counter-Defendants, and Agile's preemptive rights under the Operating Agreement arose then but were waived or otherwise released by constructive notice to Agile from Allied.

27.     There was no notice, actual or constructive, by anyone of Agile's preemptive rights, and neither Allied nor OOEC released or waived Agile's preemptive rights or

in any way consented to Old Orchard's failure to comply with Agile's preemptive rights under the Operating Agreement.

28.     Old Orchard and the other Third-Party Plaintiffs/Counter-Defendants, two of whom were the CEO and CFO of Old Orchard, knew at the time the March 31, 2009 Redemption Agreement was entered that Old Orchard had not complied, and would not comply, with Agile's preemptive rights under the provisions of the Operating Agreement.

29.     In addition, Old Orchard and the other Third-Party Plaintiffs/Counter-Defendants, two of whom were the CEO and CFO of Old Orchard, knew at the time the March 31, 2009 Redemption Agreement was entered that Old Orchard would subsequently issue cash dividend distributions to Old Orchard's remaining members and a corresponding issuance of new Units to all of those members except Agile, and that in doing so they would not comply with Agile's preemptive rights under the Operating Agreement, and in fact, they did not so comply.

30.     Old Orchard breached the preemptive rights provisions of the Operating Agreement.

31.     Old Orchard and the other Third-Party Plaintiffs/Counter-Defendants breached their representations and warranties under the Redemption Agreement.

32.     As a direct and proximate result of Old Orchard's and the other Third-Party Plaintiffs/Counter-Defendants' breach of their warranties and representations under the Redemption Agreement, Allied and OOEC have now been required to defend the First Amended Third-Party Complaint, incurring substantial costs of defense, including attorneys' fees, and have been exposed to claims of liability.

33.     In Article VI, Section 6.3 of the Redemption Agreement, Old Orchard and the other Third-Party Plaintiffs/Counter-Defendants indemnified Allied and OOEC against all

loss and expense, including reasonable attorneys' fees, caused by any breach of or inaccuracy in any representation or warranty in the Redemption Agreement.

34.     Old Orchard and the other Third-Party Plaintiffs/Counter-Defendants are therefore liable for both breach of contract and contractual indemnity for all damages, loss and expense incurred by Allied and OOEC resulting from Old Orchard's and the other Third-Party Plaintiffs/Counter-Defendants' breach of warranties and representations.

35.     Counter-Plaintiffs have provided Counter-Defendants timely notice of their indemnity claim, following denial of their motion to dismiss the First Amended Third-Party Complaint.  In any event, Counter-Defendants have not been prejudiced since it is their own actions that have resulted in damages to Counter-Plaintiffs and their claim of indemnity.

<u>COUNT II</u>

36.     Counter-Plaintiffs incorporate by reference the allegations of paragraph 1 through 35 above.

37.     Section 2.5 of the Redemption Agreement, entitled Further Assurances, provides as follows:

> 2.5     <u>Further Assurances</u>.   The Buyers, the Company and the Seller each agree that they will, at any time and from time to time, after the Closing Date, upon the request of any other party hereto, execute, acknowledge and deliver, or use reasonable efforts to cause to be executed, acknowledged and delivered, all such further reasonable instruments, assignments, transfers, conveyances, assurances and other documents as may be required to properly effect the transactions contemplated by this Agreement.

38.     Subsequent to the March 31, 2009 closing, Allied requested Old Orchard to comply with the preemptive rights provisions of the Operating Agreement.  Such compliance was required under both the Operating Agreement and Section 2.5 of the Redemption Agreement.

39. Old Orchard refused, thereby breaching Section 2.5 of the Redemption Agreement.

40. As a direct and proximate result of Old Orchard's refusal to comply with Section 2.5 of the Redemption Agreement and its breach thereof, Allied and OOEC have now been required to defend the First Amended Third-Party Complaint, incurring substantial costs of defense, including attorneys' fees, and have been exposed to claims of liability.

41. In Article VI, Section 6.3 of the Redemption Agreement, Old Orchard indemnified Allied and OOEC against all loss and expense, including reasonable attorneys' fees, caused by any breach of any covenant or agreement made by Old Orchard in the Redemption Agreement.

42. Old Orchard is therefore liable for both breach of contract and contractual indemnity for all damage, loss and expense incurred by Allied and OOEC resulting from Old Orchard's breach of Section 2.5 of the Redemption Agreement.

43. Counter Plaintiffs have provided Counter Defendants timely notice of their indemnity claim, following denial of their motion to dismiss the First Amended Third Party Complaint.  In any event, Counter Defendants have not been prejudiced since it is their own actions that have resulted in damages to Counter Plaintiffs and their claim of indemnity.

WHEREFORE, Counter-Plaintiffs Allied and OOEC request the judgment of this Court, in an amount to be determined by the Court, against each of the Counter-Defendants Old Orchard Brands LLC, Apple Valley Holdings, Inc., Howard Veltman, Mark R. Saur, individually and as trustee of the Mark R. Saur Trust, Lisa M. Saur, individually and as trustee of the Lisa M. Saur Trust, Hillsboro Associates, LLC, and Charlene Vredevelt.

MILLER JOHNSON
Attorneys for Third-Party Defendants/Counter-Plaintiffs

Dated:  August 12, 2011          By   /s/ Jon G. March
                                     Jon G. March (P17065)
                                     David J. Gass (P34582)
                                     Joseph J. Gavin (P69529)
                                 Business Address:
                                     250 Monroe Avenue, N.W., Suite 800
                                     PO Box 306
                                     Grand Rapids, Michigan  49501-0306
                                 Telephone:  (616) 831-1700

## <u>JURY DEMAND</u>

Third-Party Defendants and Counter-Plaintiffs, Allied Capital Corporation and Old Orchard Equity Corporation, by their attorneys, Miller Johnson, hereby demand trial by jury of all issues so triable under the First Amended Third-Party Complaint, the answers and defenses thereto, and their Counterclaim.

MILLER JOHNSON
Attorneys for Third-Party Defendants/Counter-Plaintiffs


Dated:  August 12, 2011          By     /s/ Jon G. March           
                                  Jon G. March (P17065)
                                  David J. Gass (P34582)
                                  Joseph J. Gavin (P69529)
Business Address:
                                  250 Monroe Avenue, N.W., Suite 800
                                  PO Box 306
                                  Grand Rapids, Michigan  49501-0306
Telephone:  (616) 831-1700